State *v.* Murphy.

## STATE *v.* MURPHY.

### (*Knoxville.* November 19, 1898.)

1. STATE. *Liability for fees defined.*

It is the settled policy of this State, fixed by statute and enforced by the decisions of the Courts, that no public officer shall "receive fees or other compensation for any service further than is expressly provided by law." (*Post, p. 518.*)

Code construed: § 6352 (S.); § 5269 (M. & V.); § 4517 (T. & S.).

Cases cited: Johnson *v.* State, 94 Tenn., 499; State *v.* Spurgeon, 99 Tenn., 659.

2. BACK TAX ATTORNEY. *Not entitled to fees.*

A Back Tax Attorney cannot retain his fees for sales of land, made under Sec. 95, Acts 1895, Ch. 120, and bid in for the State, out of State or county revenues in his hands collected from other delinquents. He must await disposition by the State, through the County Trustee, of each parcel of land so bid in, and receive his equitable share of the compensation for the sale and resale of each parcel from its proceeds, and not otherwise. (*Post, pp. 516–520.*)

Act construed: Acts 1895, Ch. 120, Sec. 95.

3. SAME. *Same.*

The proviso of Sec. 43, Acts 1897, Ch. 1, "that the amount of fees due the Back Tax Attorneys shall be allowed them as credits in their final settlements with the State, city, and county, said amounts to be fixed by the Courts in which bills are filed," when construed in connection with the context, clearly has no application to fees of Back Tax Attorneys making sales under Sec. 95, Acts 1895, Ch. 120, but applies alone to fees of Back Tax Attorneys in suits or proceedings pending at date of passage of Act of 1897, and brought pursuant to pre-existing statutes. (*Post, pp. 519–522.*)

Act construed: Acts 1897, Ch. 1, Sec. 43.

Case cited: Reinhardt *v.* Nealis, *ante,* p. 169.

State *v.* Murphy.

4. STATE COMPTROLLER. *Not an authority in the construction of statutes.*

　That the State Comptroller, by misconstruction of a statute, had allowed his Back Tax Attorney fees out of the State's funds that the law did not authorize him to retain, affords no reason why such Back Tax Attorney should be allowed, wrongfully and illegally, to retain like fees out of the county revenues. The opinions of fiscal agents of the State are not controlling with the Courts in the construction of statutes. (*Post, p. 522.*)

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. H. B. LINDSAY, Ch.

GEORGE W. WINSTEAD for State.

COMFORT & SPILLMAN, JAMES TAYLOR and CHARLES T. CATES for Murphy.

BEARD, J. The defendant, Murphy, was appointed Back Tax Attorney for the County of Knox by the Comptroller of the State, under the provisions of Chapter 120 of the Acts of the Legislature of 1895. Having qualified himself as required by that Act, he set about the discharge of his duties, and during his incumbency he collected large sums of money from delinquent taxpayers, all of which he paid over to the financial officers of the State and county, except the sum of $5,486.67, which he claimed the right to retain from the county, as compensation

for services which he rendered as such attorney in making sales of delinquent realty, under Section 95 of that Act, from which nothing was realized. Disputing his right of retention, the bill in this cause was filed to recover from him this sum.

The section referred to provided that, in all cases where no bid was received by the Back Tax Attorney, at the sales he was authorized to make, sufficient to discharge all taxes, costs, etc., upon property offered by him at public outcry, then he should bid the full amount of delinquent taxes, costs, etc., on such property for the use of the State, county, and municipality respectively, and he was thereafter empowered subsequently to sell said property at the amount of such bid, at private sale, but subject to redemption, as in other cases. The office of Back Tax Attorney was abolished by Chapter 1 of the Acts of 1897, and, by Section 87 of the same Act, all sales of real property which had been made by Back Tax Attorneys under the authority of Chapter 120 of the Acts of 1895, and at which the State had become the purchaser, were abrogated. This included and annulled the sales in regard to which the claim of defendant was set up.

The question, then, presented in this record is, can anyone who, as Back Tax Attorney, acting under the authority conferred by Ch. 120, Acts 1895, collected money in discharge of delinquent taxes, retain this money to satisfy or pay his claim for commissions and costs attending the sale of the lands

of other delinquents, where these lands were bid in by him, as provided by Section 95 of that Act?

It is the settled policy of this State, fixed by statute and enforced by the decisions of this Court, that no public officer shall "receive fees or other compensation for any service further than is expressly provided by law." Code (Shannon), § ——; *Johnson* v. *State*, 94 Tenn., 499. So, in *State* v. *Spurgeon*, 99 Tenn., 659, where attorneys representing the State, by appointment of the Comptroller, instituted, and brought to a successful termination, a suit to recover moneys due the State's revenue, sought to burden the decree for recovery with the declaration of a lien, among the reasons given for rejecting this demand, this Court said that these attorneys must look alone to the Acts under which they were appointed to ascertain their right to compensation, adding, that "compensation depends upon a collection; until this is made they have no claim."

In view of this inflexible rule of policy, we think there is no difficulty in answering the question just propounded. By Sec. 87, Acts 1895, the compensation of the Back Tax Attorney was fixed at 10 per cent. on all taxes collected by him, whether the payment was made by delinquents voluntarily, without sale, or the collection was enforced by sale. In the event a sale of delinquent property was necessary, it was provided that after an advertisement for thirty days, at the time and place fixed in the same, the attorney should sell, at public outcry, the

property advertised to the highest bidder, and, out of the proceeds of sale there should be paid all fees, costs, taxes, interest, etc.    There can be no mistake in the construction of this section, and that a well defined purpose is there expressed, that in any case covered by its terms, that the Back Tax Attorney should look for his compensation, etc., alone to his collections.    It is equally clear that the Acts contemplated, in all sales made by him in which property was bid off by him for the State, county, etc., that he should look for compensation, etc., alone to his ultimate recovery of proceeds from those sales.    Section 95, under which the sales in question were made, and Section 96, providing, in the event the Back Tax Attorney failed to effect a public sale of the property so bid in within two years, then that he should file a bill for the enforcement of the lien for taxes, costs, etc., when taken together, leave no room for doubt on this question, so far as that Act is concerned.    But it is insisted for defendant that, by necessary implication, his right to retain is secured in the last proviso to Sec. 43, Ch. 1, Acts 1897.    That section provides for keeping alive all taxes and all liens for taxes, and all penalties and any right to redeem from tax sales accrued under former laws and existing at the time of the passage of the Act of 1897, and, also, that "all suits and proceedings" then "pending for collection of taxes under former existing laws, shall be continued to a final determination," as if that Act "had not been

State *v.* Murphy.

passed." A number of provisos follow this general provision, which are not material to the present controversy. The proviso relied upon as giving the right now claimed by the defendant, is in these words: "Provided, That the amount of fees due the Back Tax Attorneys shall be allowed them as credits in their final settlements with the State, city, and county; said amounts to be fixed by the Courts in which bills are filed."

In answer to this contention, it may be said that this proviso neither determines the amount due, nor when it would be due, so that it might avail the Back Tax Attorney as a credit in his settlement; nor does the Act anywhere else settle this matter for him. So far as such attorney, acting under the provisions of the Act of 1895 is concerned, his compensation, as has been pointed out, could only come out of the proceeds of his collections, however made, and was not due until these were made. Again, it is evident that the fees covered by this proviso, were those earned by the Back Tax Attorney in some Court proceeding instituted by him; by its express terms these "fees" were "to be fixed by the Courts in which bills are filed." Thus, instead of including, we think it necessarily excluded the defendant's present claims. For, under Section 95, of the Acts of 1895, the defendant could not file bills to enforce liens for taxes, costs, etc., accrued on the delinquent property he knocked off to the State, until the expiration of two years from the time of

his sales.    No bills were filed by him, and none could have been, because these sales were all abrogated by the Act of 1897, less than two years after the passage of the Act under authority of which he made them.

Then,. to what class of Back Tax Attorneys did this proviso apply?    We think, beyond doubt, it applied to those appointed under Acts passed prior to 1895 who had filed bills to enforce tax liens on delinquent property, which were then pending, unafected by Chapter 120 of the Acts of 1895.    *Reinhardt* v. *Nealis*, 100 Tenn. (S. C., 46 S. W. Rep., 446).

While this proviso clearly does not affect the Back Tax Attorney who had been acting under this latter Act, yet such services as the defendant now seeks compensation for were not left altogether uncared for by the Act of 1897.    Subsection 5 of Section 85 of that Act provides that the Back Tax Attorneys appointed under Chapter 120 of the Acts of 1895 shall turn over "all books, papers, and documents whatsoever in their hands relating to delinquent taxes" to the County Trustees of their respective counties for collection, while Subsection 6 provides: "In respect of all delinquent taxes, whether State, county, or municipal, now in the hands of said Back Tax Attorney, and here directed to be turned over to the County Trustee for collection, the said County Trustee will, in addition to all penalties, interest, and costs, also collect the fees therein provided by the said Act, Chapter 120, the Acts of

1895," and that "the said fees shall be equitably distributed as between said County Trustees and said Back Tax Attorneys." From what fund shall this equitable distribution be made? Unquestionably from the proceeds of these delinquent taxes when collections are made by the County Trustee. This may fail to compensate defendant as fully as he would have been but for the repeal of the Act of 1895, and in this way a hardship may be enforced against him, yet the Courts cannot go beyond the limits prescribed by the Legislature, and grant relief for him.

But it is urged, if not as an entire defense to the claim of complainant, at least as a strongly persuasive reason why the complainant should not be permitted to press its present demand, that, in a final settlement made by the defendant with the Comptroller of the State, that officer allowed him as a credit in his settlement, and permitted him to retain out of moneys collected by him for the State, the sum of $1,334.69, that being agreed between them as the State's proportion of commissions, costs, etc., which it was assumed had accrued to defendant from making the sales of delinquent property now in question. To this we can only say, the construction of Acts of the Legislature by the fiscal officers of the State, or by any one of them, cannot be allowed to control the Courts when they are called upon to construe the same Acts.

The result is, the decree of the Court of Chancery Appeals is affirmed, with costs.