## THE STATE ex rel. W. A. THRASH et al. v. FRED LAMB, Judge.

**In Banc, November 27, 1911.**

1. **PROHIBITION: Demurrer: Admission.** Where a writ of prohibition issues, and respondent, for return, demurs thereto, asserting that the petition does not state a cause of action, whereupon relators pray judgment, all the facts well pleaded, both in the bill filed in the circuit court asking for the writ of injunction which issued, and in the petition filed in the Supreme Court asking for the writ of prohibition, must be taken as true.

2. **INJUNCTION: Public Nuisance: Prosecuting Attorney: Bond.** A court of equity has authority to issue a temporary injunction, without bond, to enjoin a public nuisance, upon the filing, by the prosecuting attorney, in the name of the State, proceeding *ex officio*, of a bill setting forth such nuisance and charging its maintenance by defendants. The right of the State to abate a public nuisance by proceedings in equity to enjoin is beyond question; the prosecuting attorney has authority by virtue of his office to institute such suit; and the statute expressly provides that no bond shall be required in any injunction suit instituted by the State in its own behalf.

State ex rel. v. Lamb.

3. PROSECUTING ATTORNEY: Authority to Represent State: Injunction: Public Nuisance: Bond. The history of legislation shows that since 1825 it has been the policy, as indicated by the various acts passed by the Legislature, to impose upon the local State's attorney, whether known as circuit or prosecuting attorney, the duty of instituting proceedings in behalf of the State in matters arising within his local jurisdiction. The prosecuting attorney represents the State and exercises powers analogous to those exercised by the Attorney-General of England. He has authority, given by statute, to institute injunction suits, *ex officio*, in the name of the State, without giving bond, to enjoin and abate a public nuisance arising within his county. As to matters arising within his county his act in instituting a suit *ex officio* is the act of the State; and as the statute specificially exempts the State from the requirement to give bond for a temporary injunction, it exempts him.

4. INJUNCTION: No Bond: Defendants Without Remedy: Prohibition. Although the prosecuting attorney is authorized by law to institute suit, in behalf of the State, to enjoin a public nuisance, and can proceed without bond, yet as the absence of a bond may work great hardship on the defendants in an injunction in case the bill is ultimately dismissed, the Supreme Court, if defendants apply to it for a writ of prohibition against the judge issuing the temporary injunction, will closely scrutinize the proceedings, and prohibit and stop them, should it clearly appear that a legal wrong is about to be committed for which there is no other adequate remedy.

5. ————: To Prohibit Crime: Coupled with Public Nuisance: Selling Liquor in Restaurant: Disorderly House. A court of equity has no jurisdiction to enjoin the commission of a crime; but it has power to enjoin a public nuisance, and if the things charged in the petition for injunction constitute a public nuisance, the writ will not be withheld merely because the act or some of them when committed would be a crime. Where defendants, in the petition for injunction by the prosecuting attorney proceeding *ex officio*, are charged with keeping a disorderly house, namely, in keeping as a blind and a sham and a subterfuge a restaurant which, because of the sale therein of intoxicating liquors, has become the resort of idlers and dissolute, immoral and dangerous persons, whose continuous disorderly conduct tends to the injury of the public morals, peace and welfare, and these charges are admitted by the state in which the pleadings in the Supreme Court for a writ of prohibition against the judge issuing the injunction appear, equitable relief to enjoin the public nuisance will not be withheld simply because the charge of selling intoxicating liquors is a charge of a crime in violation of the Local Option Law for which the State has an ample remedy by a criminal

State ex rel. v. Lamb.

prosecution. Nor will it be withheld because, on a subsequent trial for a violation of the Local Option Law, defendants were acquitted. Their conduct, admitted by the pleadings, constitutes a public nuisance, to suppress which a court of equity has unquestioned power. The purpose of the suit is not to enjoin a violation of the Local Option Law, or to enjoin the conducting of a legitimate restaurant business, but to enjoin the things charged constituting a disorderly house.

*Held*, by WOODSON, J., dissenting, that viewing the petition for the injunction in the most unfavorable light for defendants it simply charged they were selling intoxicating liquors in violation of law in a private house, and that constitutes a crime under the criminal laws of this State, and in no sense a public nuisance; but the circuit court had jurisdiction to hear and determine the sufficiency of the petition to charge a public nuisance, and for that reason the writ of prohibition should be denied.

6. ———: ———: ———: ———: ———: **Sufficiency of Pleading: Prohibition.** Whether the petition for injunction attempting to charge a public nuisance measures up to a full legal sufficiency, and whether the order made in response thereto is too broad, are questions which should, in the first instance, be addressed to the chancellor; and where the petition charges a public nuisance or nothing, the Supreme Court will not prohibit him from proceeding by injunction, since he has jurisdiction over the subject-matter, and in refusing to modify the order he was acting within his jurisdiction.

7. ———: ———: ———: ———: ———: **Refusal to Modify Order: To Permit Continuance of Restaurant.** Where a restaurant is operated as a public nuisance as one of its elements, the legitimate part of its operation will not so leaven the whole as to save the whole from abatement. Where the order enjoining defendants from conducting their restaurant on a certain lot did not forbid them from conducting a legitimate restaurant business at any other place, a refusal of the chancellor to sustain a motion to modify the order so as to allow them to continue their lunch business, is not oppressive, if it is obvious, in the light of the averments of the bill, that such modification, if made, would place the defendants where they were before the order was issued —that is, would be to authorize a lunch stand as a blind for the illegal sale of liquor, and leaving the order effective only to restrain the illegal sale of liquor and, hence, changing it into a defiance of the rule against enjoining the commission of a crime.

8. ———: ———: ———: **Notice.** Where at a hearing on ehe motion to modify the temporary restraining order had three days

after the order was issued, an opportunity was given to present all matters competent at a preliminary hearing, it was not an abuse of the chancellor's jurisdiction to grant the temporary order without notice to defendants and a preliminary hearing.

## Prohibition.

WRIT DENIED.

*John D. Taylor* for relator.

(1) "Prohibition is an extraordinary remedy and will not lie where the party claiming it has adequate remedy by ordinary means, and the ordinary means that will defeat the application for this writ must be sufficient to afford the relief the case demands." State ex rel. v. Aloe, 152 Mo. 483; State ex rel. v. Eby, 170 Mo. 497; State ex rel. v. Denton, 128 Mo. App. 314. (2) The matters complained of in the petition for the injunction are immoral or criminal acts, and injunction is not a proper remedy for the suppression of acts merely immoral or criminal. State ex rel. v. Uhrig, 14 Mo. App. 413; State ex rel. v. Schweickhardt, 109 Mo. 496; State ex rel. v. Canty, 207 Mo. 456; (3) The matters complained of in the petition for injunction is that relators are selling intoxicating liquors in violation of the Local Option Law. The Criminal Code of Missouri, and Sec. 7246, R. S. 1909, furnish an adequate remedy for the suppression of the matters complained of. A court of equity will not interfere where there is an adequate remedy at law for the suppression of the matters complained of. State v. Crawford, 28 Kan. 726; State v. Vaughn, 81 Ark. 117; State v. O'Leary, 155 Ind. 526. (4) Injunction should not be granted on *ex parte* application, thereby destroying plaintiff's business and resulting in a loss of the property without opportunity for the persons enjoined to be heard. 1 Spelling Ext. Legal Rem. (2 Ed.), art. 381; 6 Am. & Eng. Ency. Law (2 Ed.), 347; Scheurich v. Light Company, 109 Mo. App.

430. (5) A restaurant business is not a nuisance *per se*, and it is wholly within the province of a jury to determine what constitutes a nuisance; and until some complaint has been made of some special injury, or until the State has indicted, tried and convicted persons sought to be enjoined for maintaining a nuisance, and until it has been clearly demonstrated that there is no adequate remedy at law for the suppression of grave immoral and illegal acts which have become or may become especially injurious to the public or to the rights of person or property of some individual, should a court of equity invade the field of criminal law. 1 Spelling Ext. Legal Rem. (2 Ed.), art. 356; State v. Crawford, 28 Kan. 726; State v. O'Leary, 52 L. R. A., 299. (6) The granting of the interlocutory injunction was a violation of relators' rights guaranteed them under Secs. 4 and 30, art. 2, Constitution of Missouri. (7) The granting of an injunction as prayed for in the petition filed is in violation of Secs. 12 and 28, art. 2, Constitution of Missouri.

*Roy W. Rucker, Forrest G. Ferris* and *Wm. H. Wallace* for respondent.

(1) A house where persons are accustomed to assemble, and acts committed or practices indulged in which are injurious to the peace or the health or the morals of the people, is a public nuisance. Such a place becomes a nuisance of the most aggravated type when the inevitable result is to injure the peace, health and morals all combined, as is admitted by the pleadings in the case at bar. State v. Canty, 207 Mo. 439; Mugler v. Kansas, 123 U. S. 623; Kansas v. Ziebold, 123 U. S. 637; State v. Ingram, 118 Mo. App. 327. (2) The maintenance of an unlicensed tippling house, to the annoyance or injury of any portion of the inhabitants of the State, is a nuisance in violation of Sec. 4800, R. S. 1909, relating to nuisances. State v.

Ingram, 118 Mo. App. 323. (3) By authorities cited in point one, supra, to conduct without license a place of business whose tendency is to deprave public morals, is to maintain a nuisance. The following authorities hold that the use of intoxicating liquors tends to deprave public morals. Austin v. State, 10 Mo. 593; State v. Seebold, 192 Mo. 727; State ex rel. v. Hill, 84 Mo. App. 18; State ex rel. v. Hudson, 78 Mo. 302; State v. Bixman, 162 Mo. 1; Black on Intoxicating Liquors, sec. 24; opinion of Chief Justice Tawney in License Cases, 5 Howard, 577; Opinion of Mr. Justice McLean, same volume, pages 588, 589; Opinion of Mr. Justice Woodbury, p. 628, same volume; Opinion of Mr. Justice Grier, pp. 631, 632, same volume; Mugler v. Kansas, 123 U. S. 658; Cooley on Const. Law (4 Ed.), 727. (4) Our statute on the subject does not undertake to cover all cases of public nuisances, and as to those not provided for by statute, the common law remains in force. State v. Boll, 59 Mo. 321; State v. Ingram, 118 Mo. App. 327. (5) If the case of State v. Ingram, 118 Mo. App., declaring specifically that an "unlicensed tippling house maintained to the annoyance or injury of any portion of the inhabitants of this State" is a nuisance, under our statute, is overruled by this court, then we submit that the petition for the injunction in the case at bar abundantly charges also a disorderly house which is a nuisance at common law if not by statute in Missouri. State ex rel. v. Dykeman, 153 Mo. App. 416; State ex rel. v. Canty, 207 Mo. 454; Cheek v. Com., 79 Ky. 359; 1 Wood on Nuisances (3 Ed.), secs. 37, 38. (6) We have in the case at bar a nuisance maintained by outlaws. State v. Seebold, 192 Mo. 727; State v. Ingram, 118 Mo. App. 327; Austin v. State, 10 Mo. 591; State v. Bixman, 162 Mo. 1; Barnett v. Pemiscot County, 111 Mo. App. 693. (7) A court of equity has power and will enjoin the continuance of a public nuisance. State v. Canty, 207 Mo. 439; Mugler v. Kansas, 123 U. S. l. c. 672. (8)

Equity will not refuse to lend its aid, although the nuisance sought to be enjoined is also a crime. And in the case at bar it will not deny its relief because the sale of liquor without license is a criminal offense, punishable under our statute. State v. Canty, 207 Mo. 439; Mugler v. Kansas, 123 U. S. 623; Kansas v. Ziebold, 123 U. S. 654; People v. St. Louis, 48 Am. Dec. (Ills.) 340; 2 Story's Eq., secs. 921, 922; Story's Equity Jurisprudence (13 Ed.), secs. 921, 923, 924. (9) Relators' contention that their property rights are being invaded is untenable. Mugler v. Kansas, 123 U. S. 623. (10) No bond is required of the State in a case like this. State ex rel. v. Railroad, 221 Mo. 227.

FERRISS, J.—This is an original proceeding by petition for a writ of prohibition against the respondent, judge of the 12th Judicial Circuit, prohibiting him from proceeding further, in the exercise of jurisdiction in the case of The State at the relation of Roy W. Rucker, prosecuting attorney of Chariton county, against the relators.

It appears from the petition filed by relators that they were for some time prior to July 3, 1911, owning and operating a lunch stand and soft drink establishment in the city of Keytesville, Chariton county, under a license from that city; that on said third day of July, Roy W. Rucker, prosecuting attorney, presented the following petition to the respondent circuit judge:

STATE OF MISSOURI ex rel. ROY W. RUCKER, Prosecuting Attorney of Chariton County, Missouri, Plaintiff, v. W. P. THRASH, AUBREY THRASH and R. P. CARROLL, defendants.

Comes now the above named plaintiff, by Roy W. Rucker, prosecuting attorney, in behalf of the State of Missouri, and states:

That on the 24th day of April, 1908, the act of the Legislature of the State of Missouri, approved April 5, 1887, now Article 3 of the Revised Statutes, 1909, of said State, commonly known

as the Local Option Law, was adopted in said county of Chariton, and that said Local Option Law was in full force and effect in said county at all times and dates hereinafter mentioned.

That the defendants, W. P. Thrash, Aubrey Thrash and R. P. Carroll, on a date to this plaintiff unknown, moved into and occupied the first floor of the premises known as the Hansman and Schell building, located in lot one, on Bridge street, in the city of Keytesville, Chariton county, Missouri, with the avowed and pretended intention of conducting a restaurant and lunch room therein.

Plaintiff states that defendants opened up said pretended restaurant and lunch room as a mere subterfuge, and that they have, in fact, for themselves and by their officers, agents, servants and employees, openly and in violation of the laws of the State of Missouri, and particularly of what is known as the Local Option Law, engaged in storing for and selling and disposing of to the public intoxicating liquors and intoxicating beverage, containing alcohol, on every day of the week, including Sundays from on or about the 1st day of June, 1910, up to the time of the filing of this petition herein, and have since on or about the 1st day of June, 1910, until the present time, engaged in the business of selling intoxicating liquors, to-wit, beer and whiskey and intoxicating beverages containing alcohol, called grape juice and manitou, in said premises, without any legal authority to sell the same.

And plaintiff further states that said intoxicating liquors and intoxicating beverages, containing alcohol, were so, as aforesaid, disposed of and sold by the said defendants, their officers, agents, servants and employees indiscriminately to all persons offering to purchase the same.

Plaintiff states that the illegal sale of intoxicating liquors and intoxicating beverages, containing alcohol, as aforesaid, causes and has caused a large number of idle, lawless, turbulent, dissolute and immoral and dangerous persons, addicted to the use of ardent spirits, to be attracted to and assembled at the defendants' said premises, and that by reason thereof much disorderly conduct, tending to destroy the public morals of the community, and to the prejudice of the good name and general welfare of the people, has been indulged in on the said premises.

Plaintiff further states that the acts herein complained of are continuing from day to day and from week to week, and are contrary to the good morals, public peace and general welfare of the people of the State, and constitute a continuing violation of the law, and are a public nuisance; that indictments have been returned against all of the above named defendants, charging them with the violation of the Local Option Law, and that said prosecutions are now pending against those defendants, but that because of the nature of the cases such proceedings cannot be determined for several months, and that in the mean-

State ex rel. v. Lamb.

time the defendants will be free to continue in the unlawful and immoral acts herein complained of.

Wherefore, the premises considered, the plaintiff prays that the defendants, their officers, agents, servants and employees, be perpetually restrained and enjoined from conducting said restaurant and lunch room, and from selling or disposing of intoxicating liquors or intoxicating beverages, containing alcohol, at their premises in the city of Keytesville, Chariton county, Missouri, or at any place in said county.

And plaintiff further prays, in the interest of the public morals and the enforcement of the laws, that the defendants, their officers, agents, servants and employees, immediately be restrained from continuing the acts and things herein complained of, and that a temporary injunction be so granted pending the final hearing of the cause, and for such other relief as to the court may seem proper.

ROY W. RUCKER,
Prosecuting Attorney
of Chariton County, Missouri.

STATE OF MISSOURI, County of Chariton, ss.

Roy W. Rucker, prosecuting attorney of Chariton county, Missouri, makes oath and says that the facts and statements contained in the foregoing petition are true to the best of his knowledge and belief.

ROY. W. RUCKER.

Subscribed and sworn to before me, this _____ day of May, 1911.                                     W. L. WRIGHT,
[SEAL]                            Circuit Clerk.

That thereafter the respondent, without notice to relators, and without knowledge of the facts alleged in the petition, granted a restraining order which, after reciting the allegations of the petition, runs thus:

And it appearing that the said petition was on the 19th day of May, 1911, filed with the circuit clerk of Chariton county, Missouri, and the undersigned judge, having seen and heard said petition, and it appearing that plaintiff, upon the facts stated in the petition, is entitled to the relief prayed for, it is ordered that a temporary injunction be granted enjoining defendants, their agents, servants and employees from conducting their said restaurant and lunch room, located in lot one and block one, on Bridge street, in the city of Keytesville, Chariton county, Missouri, and from selling and disposing of intoxicating liquors and intoxicating beverages containing alcohol, at their premises in the city of Keytesville, Chariton county, Missouri,

or at any place in said county, until the further orders of the circuit court of Chariton county, Missouri.

It is further ordered that a copy of this order, certified to by the clerk of the circuit court of Chariton county, Missouri, be served upon the defendants.

Given under my hand this 3rd day of July, 1911.

FRED LAMB,

Judge of the Circuit Court of Chariton County, Missouri.

That on July 6th relators moved the court to so modify the order as to allow them to conduct their restaurant and lunch counter business, which motion was denied; that by reason of the fact that no hearing can be had before the next September term, and "because of the nature of their stock of goods, the same will be spoiled and totally ruined in that time"; that by reason of the fact that the petition was filed by the prosecuting attorney in the name of the State, no bond was required, and that they have no remedy for the loss that they may suffer by reason of this confiscation of their property; that same is without due process of law, and violative of section 30 of article 2, and section 4 of article 2, of the State Constitution; that under the Constitution and laws of the State ample and adequate means are offered for the prevention of the matters charged as aforesaid by means of criminal prosecutions; that this injunction violates sections 12 and 28 of article 2 of the State Constitution. Here follow several allegations of legal conclusions, charging violation of the rights of relators, not material, and which it is unnecessary to set forth.

On July 17, 1911, our preliminary rule in prohibition issued. On October 10, 1911, respondent for return filed the following demurrer:

"Respondent herein demurs to relators' petition filed herein for the following reasons:

"Because the petition does not state facts sufficient to constitute a cause of action.

"Because the facts stated in the petition do not entitle relators to the relief prayed for, or to any relief.

"Because the facts stated in the petition show that respondent was proceeding in a matter of which he had jurisdiction, and that he was acting within the scope of his power and authority."

Whereupon relators pray judgment, notwithstanding the return.

Upon this record relators contend, first, that the circuit court was without jurisdiction to issue the preliminary injunction, because no bond was given, and, second, that the order made was in excess of jurisdiction.

As the pleadings stand, all the facts well pleaded both in the bill filed by the prosecuting attorney and in the petition by the relators here must be taken as true.

I. The prosecuting attorney, proceeding *ex officio*, in the name of the State, filed a bill against relators to enjoin a public nuisance, and, without giving bond, secured a temporary injunction.

Section 2522, Revised Statutes 1909, provides that "no injunction, unless on final hearing or judgment, shall issue in any case, except in suits instituted by the State in its own behalf, until the plaintiff, or some responsible person for him, shall have executed a bond," etc.

We have heretofore decided that a court acts in excess of its jurisdiction when it issues a preliminary injunction, without bond, in a case where such bond is required by statute. [State ex rel. v. Williams, 221 Mo. 227; City of St. Louis v. St. Louis Gaslight Co., 82 Mo. l. c. 353.]

The question here is whether the suit was "instituted by the State in its own behalf." If the State in its own behalf may institute a suit to enjoin a public nuisance, and if the prosecuting attorney had authority

by virtue of his office to institute such suit, no bond was necessary. The right of the State to abate a public nuisance by proceedings in equity to enjoin is beyond dispute. In State ex rel. v. Canty, 207 Mo. 439, we accept as a correct statement of the law the following citation from 4 Pomeroy's Eq. Jur. (3 Ed.); sec. 1349: "A court of equity has jurisdiction to restrain existing or threatened public nuisances by injunction, at the suit of the Attorney-General of England, and at the suit of the State, or the people, or municipality, or some proper officer representing the commonwealth, in this country."

Section 1007, Revised Statutes 1909, provides that prosecuting attorneys "shall commence and prosecute all civil and criminal actions in their respective counties in which the county or State may be concerned."

In determining the powers of the prosecuting attorney in this regard, under the present state of the statute law, it will be instructive to review the history of our legislation concerning the duties of attorneys authorized to institute proceedings in behalf of the State.

In 1806, the law provided for an Attorney-General for the territory which subsequently became the State of Missouri, whose duty it was to prosecute in said Territory "all pleas, civil and criminal, in behalf of the United States or of said Territory," with authority to appoint deputies in the several districts in the Territory. [Territorial Laws, p. 67.] In 1815, the Governor was authorized to appoint a circuit attorney in each of the circuits in the Territory. [Territorial Laws, p. '358.] In Geyer's Digest of 1818, the foregoing Act of 1806 is appended to the Act of 1815, as section 2 of the article "Circuit Attorneys," as follows: "It shall be the duty of the said Attorney-General (circuit attorneys) to prosecute in said Territory all pleas, civil and criminal, in behalf of the United States or of said Territory." By bracketing the

words "circuit attorneys," the law was construed to impose on the several circuit attorneys the duties which had been imposed upon the Attorney-General by the Act of 1806. [Geyer's Digest, p. 118.] In 1820, an act was passed directing the Attorney-General to give opinions to the executive officers, and to conduct all suits "in which the State may be concerned. . . . . in the circuit in which the seat of government may be," and providing, further, that within such circuit he should perform the duties of the circuit attorney. [Territorial Laws, p. 688.] This act also provided for the appointment of a circuit attorney in each of the several circuits of the State "who shall in their respective circuits do and perform all and singular the duties heretofore required of the territorial circuit attorneys and Attorneys-General." In 1824, an act was passed authorizing the Attorney-General to conduct all suits in which the State was concerned in the circuit within which should be located the seat of government, and that in other circuits the circuit attorneys should "commence and prosecute all actions, suits, processes and prosecutions, civil and criminal, in which the State or any county may be concerned" within his circuit. [Revision of 1825, p. 156.] In 1835 was passed an act providing that the Attorney-General should reside at the seat of government, and advise the State officers and Assembly, and "shall act as circuit attorney for the circuit in which the seat of government is, and in said circuit shall perform the duties required by law of circuit attorneys." This act prescribed the duties of circuit attorneys in their respective circuits, the same as above quoted from the Revision of 1825. [R. S. 1835, p. 88.] Similar provisions are found in the Revised Statutes of 1845, p. 156. In the Revision of 1855, p. 273, the authority in the Attorney-General to act as circuit attorney in the circuit within which the seat of government is located is omitted. His

duties are of an advisory character simply, except that it is made his duty to represent the State in the Supreme Court on appeals and writs of error. No authority is given him to institute actions. The duties of the circuit attorneys remain the same. No substantial change appears in the Revision of 1865, p. 141.

In 1868 (Laws 1868, p. 11), the following act was passed, and appears in 1 Wagner's Statutes of 1872, p. 202: "The Attorney-General shall be, and he is hereby authorized and empowered, in the name and in behalf of the State of Missouri, to institute and prosecute all suits and other proceedings at law and in equity requisite or necessary to protect the rights and interests of the State and to enforce any and all rights, interests or claims of the State against any and all persons, bodies politic or corporate."

In 1872 (Laws 1872, p. 13), the Legislature abolished the office of circuit attorney, and provided for the election in each county of a prosecuting attorney, "who shall perform the duties now devolving by law on the circuit attorneys and county attorneys." Since the passage of this law the duties of prosecuting attorneys relating to proceedings in which the State is concerned have been in substance similar to those imposed on circuit attorneys by the former laws.

The history of this legislation shows that, since 1825, it has been the policy of this State, as indicated by the various acts passed by the Legislature, to impose upon the local State's attorney, whether known as the circuit or prosecuting attorney, the duty of instituting proceedings in behalf of the State in matters arising within his local jurisdiction. From 1824 to 1855 the Attorney-General acted as circuit attorney in the circuit within which the seat of government was located. From 1855 to 1868 the Attorney-General had no such power. During that period the right to institute proceedings in behalf of the State was in the

circuit attorneys exclusively.   Since 1868 the statutes have been substantially as they are now; section 1007, Revised Statutes 1909, authorizing the prosecuting attorney to commence proceedings in matters concerning the State within his county, and section 970, Revised Statutes 1909, imposing duties upon the Attorney-General in substance like those provided in the Act of 1868 above quoted.

Whatever may be the proper construction of section 970 as to the duties of the Attorney-General, it is clear that during all the time since the early territorial days the local State's attorney has been the proper legal representative of the State to institute proceedings in behalf of the State, and in no respect has that power been curtailed by legislation.

In a strict historical sense, the prosecuting attorney represents the State and exercises powers analogous to those exercised by the Attorney-General in England. As was said by the Supreme Court of Michigan:   "The prosecuting attorney is a very responsible officer, selected by the people and vested with personal discretion intrusted to him as a minister of justice, and not as a mere local attorney."   [Engle v. Chipman, 51 Mich. 524.]

The sovereign power of government can only be exercised through its officers.   Consequently, to each officer is delegated some of the powers and functions of government.   Usually a discretion that is within the power granted to an officer cannot be controlled by other officers.   It has been held, for instance, that mandamus will not issue to control the discretion of the Attorney-General as to whether or not he should institute *quo warranto* proceedings.   [People v. Attorney-General, 41 Mich. 728.]   A prosecuting attorney has discretionary power to institute or discontinue prosecutions.   [1 Bish. New Crim. Proc., sec. 287.]   He may file informations without leave of court (State v. Kyle, 166 Mo. l. c. 306), wherein we

cite and approve the following from Bishop's New Crim. Proc., sec. 144: "The powers which in England are exercised by the Attorney-General and the Solicitor-General are largely distributed among our district attorneys." Mr. Bishop further states the law thus: "The functions of the English Attorney-General are committed to a prosecuting officer known in the different States as Attorney-General, State's Attorney, District Attorney, or the like. To him, therefore, the power of *nolle prosequi* commonly pertains, to be exercised as in England free from judicial control. Not even, by the better practice, will the court advise this officer whether to employ it or not in the particular case." [1 Bish. New Crim. Proc., sec. 1388, paragraph 2.] In Texas, the Supreme Court decided that a judge had no power to enter a *nolle prosequi*, or dismissal of a case pending, against the objection of the district attorney. [State v. McLane, 31 Tex. 260.] So in New Hampshire the Supreme Court, speaking of the right of the prosecuting officer in this regard, says: "The law has lodged that duty with the officer selected for that special purpose, and who are responsible for the manner in which they perform their duties. . . . His power to enter a *nol. pros.* is held *virtute officii.* He executes it upon his official responsibility." [State v. Tufts, 56 N. H. 137.] "The court has no right to interfere with its exercise." [Comm. v. Tuck, 20 Pick. 366; Same v. Smith, 98 Mass. 10.] In State ex rel. v. Rose, 84 Mo. 198, we held that a prosecuting attorney may file an information in the nature of *quo warranto, ex officio,* without leave of court, but that when he prosecutes at the relation of an individual such leave is necessary. This upon the principle that when he acts *ex officio,* he is exercising the discretion which the State has delegated to him, and, through him, the State may act without leave of court. We held in State ex rel. v. McMillan, 108 Mo. 153, that under the general power granted to the

prosecuting attorney by section 1007, he could file an information *ex officio* in *quo warranto*, it being contended in that case that he derived his power to act solely from the statute on *quo warranto* which authorizes him to file an information at the relation of some third person. These rulings proceed upon the theory that when the prosecuting attorney acts *ex officio*, the State is acting directly through him.

It is clear that if the prosecuting attorney acts at all *ex officio*, he must act for and in behalf of the State. If he has power to act for the State, and institute proceedings at his discretion, as we think he has, then it follows that proceedings instituted by him of the character in question are in behalf of the State, and that no bond is required. It will not do to say that the prosecuting attorney may *ex officio* properly institute injunction proceedings in behalf of the State, and still be required to give bond. He has no right to institute the proceeding at all as prosecuting attorney unless he does so in behalf of the State. "Acts of public officers acting on behalf of the State, within the limits of the authority conferred on them, and in the performance of their duties, are the acts of the State." [Throop on Public Officers, sec. 21.]

Whether the State is the proper party to institute this injunction proceeding is not in itself a jurisdictional question. This we decided in State ex rel. v. Zachritz, 166 Mo. l. c. 314, where we said: "Moreover, whether the State can maintain the action is a question to be raised and determined in the court where the case is pending; it does not go to the power or jurisdiction of the court, and its decision here could not furnish a basis for prohibition." Again, in the case of State ex rel. v. Williams, 221 Mo. l. c. 263, we held to the same effect, namely, that whether the use of the name of the State by the prosecuting attorney was authorized was a question for the circuit court, and could not "avail here to show want of jurisdiction."

But in order to get at the question whether a bond should be required to give the court jurisdiction, it becomes necessary to determine whether the prosecuting attorney had authority to institute the suit on behalf of the State. If he had such authority, no bond was necessary, as we have shown above. We have been cited to the case of State ex rel. v. Williams, supra, as authority for the proposition that the prosecuting attorney has no right to institute this proceeding. We do not so regard that case. It holds that the circuit attorney of the city of St. Louis has no power to represent the State in matters outside of his circuit. That case, as we understand it, is authority for the proposition above enunciated regarding the power of a prosecuting attorney within his own county. In that case we said: "But while the Attorney-General may use the name of the State in any county of the State, in a proper case, it by no means follows that the circuit attorney of St. Louis, or a prosecuting attorney, or all prosecuting attorneys, may use the name of the State in enjoining or restraining corporate delinquencies or abuses _outside of their respective counties or city_." We said, further: "However, it is perfectly obvious that the subject-matter of the action is not something that pertains solely to the city of St. Louis, but is intended to enjoin railroads that do not approach the said city from any direction, and are many miles distant therefrom." The decision in that case proceeds distinctly upon the theory that the circuit attorney of the city of St. Louis is limited to the city of St. Louis in exercising his power to institute proceedings in behalf of the State. In the Williams case we referred with approval to the case of State ex rel. v. Saline County Court, 51 Mo. 350, where a proceeding was instituted by the circuit attorney of that circuit to enjoin an issue of bonds, and we say in commenting on that case: "The circuit attorney at that time was the representative of the State in the circuit

in which Saline county was situated. That case affords no precedent for holding that the circuit attorney of St. Louis may institute such actions outside of St. Louis." It is true that the opinion in the Williams case says that inasmuch as the circuit attorney was undertaking to act outside of his jurisdiction, he should have been required to give a bond before the temporary injunction was granted. That was upon the assumption that, outside of his jurisdiction, the circuit attorney could not represent the State, but was acting as an individual. What was said about the bond must be construed as applicable to the facts in the case. That case is no authority for the proposition that a prosecuting attorney must give a bond in an injunction suit instituted by him within his county concerning matters arising within his county.

Our conclusion is that the prosecuting attorney was authorized by law to institute a suit in the circuit court of Chariton county to enjoin, in behalf of the State, a public nuisance, and that he could proceed without giving bond. Considering, however, that the absence of a bond might work great hardship on the defendants in an injunction, in case the bill ultimately is dismissed, we should, if in such case parties apply here for prohibition, closely scrutinize the proceedings complained of and prohibit, should it clearly appear that a legal wrong is about to be committed for which there is no other adequate remedy. An observation by VALLIANT, J., in State ex rel. v. Aloe, 152 Mo. l. c. 483, is apt on this point. He says: "Prohibition is an extraordinary remedy and will not lie where the party claiming it has adequate remedy by ordinary means. But the ordinary means that will defeat the application for this extraordinary writ must be sufficient to afford the relief the case demands." On the other hand, inasmuch as the State may lawfully proceed without bond, a situation may arise where loss without remedy will result from the failure of the State to sus-

tain its proceedings, and this without any wrong, in a legal sense, against which prohibition would lie. It may also be said that it is fair to assume that the court which grants the injunction without bond will fully appreciate its added responsibility, and act with due regard to the interests of the parties.

II.   There is no question as to the jurisdiction of the circuit court to enjoin a public nuisance. We are to consider only whether the facts pleaded justified action by the State, and, further, whether the action of the court was an abuse of or in excess of jurisdiction.

Relators concede, on this record, for the purposes of this case, that they were conducting a sham restaurant, where, under the guise of a legitimate, licensed business, they were openly selling liquor in violation of law, and they point triumphantly, in oral argument, to the fact that so far they have escaped conviction for such offense in the various criminal prosecutions heretofore instituted by the State. They concede, further, that their place of business, by reason of the illegal practices therein permitted, has become the resort of idlers and dissolute, immoral and dangerous persons, whose continuous disorderly conduct tends to the injury of the public morals, peace and welfare. Such conduct, as the court found, constituted a continuing public nuisance. The relators, without denying the facts alleged in the bill, or disputing seriously the conclusion that they constitute such nuisance, seek to separate the elements which, together, constitute this nuisance, and insist that the court had no jurisdiction to enjoin either element so segregated. Relators' propositions are that the court cannot lawfully enjoin (a) the commission of a crime, i. e., the illegal sale of liquor, or (b) the business of conducting a restaurant. The State is seeking by means of injunction to close this place, not primarily because of the illegal sale of liquor, nor because of the operation of a sham restaurant. These things are pleaded as the facts which underlie

the nuisance, namely, a disorderly house.   The bill
for injunction is bottomed on our ruling in the case of
State ex rel. v. Canty, 207 Mo. 439, and seeks to
restrain a public nuisance.   The fact that this alleged
nuisance involves selling liquor in violation of law, an
offense that may be prosecuted under the criminal law,
will not prevent an injunction against the nuisance.
We have ruled many times that injunction will not lie
to prevent the commission of a crime.   We said in
the Canty case, speaking through WOODSON, J., that
"this court has uniformly held that a court of equity
has no jurisdiction to enjoin the commission of a crime;"
but Judge WOODSON said further in that case (l. c.
459): "The contention of respondents that a court
of equity has no jurisdiction to abate a public nuisance
where the offenders are amenable to the criminal laws
of the State, is not tenable."   And the court, speaking
further through VALLIANT, J., says (l. c. 460): "A
court of equity will not undertake to enforce the criminal
law; therefore it will not enjoin the commission of a
threatened act merely because the act would be a
crime, but, on the other hand, neither will it withhold
its equitable relief in a case in which, for other reasons,
it has jurisdiction, merely because the act when com-
mitted would be a crime."

There can be no serious contention that this in-
junction forbids a legitimate lunch business, in face of
the record admission that the restaurant is a mere
sham and subterfuge for the sale of liquor, but we ap-
prehend that a lunch business, whether genuine or
not, operated in connection with a public nuisance,
and as one of its elements, would not so leaven the whole
as to save it from abatement.   If this petition states
a case at all it states a public nuisance, and we think
the facts therein alleged justify the discretion exercised
by the State's attorney in bringing the suit.   Whether
the pleadings measure up to full legal sufficiency, and
whether the order made is too broad, are questions

which should, in the first instance, be addressed to the circuit court. These are matters for correction there upon proper application. Relators recognized this rule by filing a motion to so modify the injunction as to allow them to continue their lunch business. They did not challenge the jurisdiction of the court, the sufficiency of the petition, or, otherwise than is sought by the motion to modify, the order itself. The order restrained the lunch business in the building complained of as the public nuisance only. There is no restraint so far as the restaurant is concerned as to any other place. The motion to modify was denied on July 6th, three days after the original order. Was this refusal to modify oppressive? We think not. The court was acting within its jurisdiction. In the light of the averments in the bill, it is obvious that such modification, if made, would have placed relators where they were before the restraining order was issued —operating a lunch stand as a blind for the illegal sale of liquor. It would, in effect, leave the restraining order standing against the sale of liquor alone, and, consequently, in defiance of the rule against enjoining the commission of a crime.

Counsel for relators frankly stated in argument that if that modification had been allowed, this proceeding for prohibition would not have been necessary. It may have appeared at the hearing on that motion, in fact, as it appears here by the admissions on the record, that there was no intention to conduct a bonafide lunch business, independent of the illegal sale of liquor and the maintaining of a public nuisance.

It is further urged by relators that because they were obliged to close their house on July 3rd, with no opportunity for a speedy hearing, their stock of goods would be ruined. Nothing is alleged as to nature or quantity of this stock. So far as the restaurant is concerned, there was a speedy hearing, to-wit, on July 6th, three days later. If the complaint in this regard

refers to the wet goods carried by relators in their stock, we apprehend that the court would not exceed or abuse its jurisdiction in holding that time would not impair its value.

Relators further claim that it was an abuse of jurisdiction to grant the restraining order without notice and preliminary hearing. In view of the fact that upon the record here there is no denial of the facts set up in the bill for injunction, we do not see how relators were injured by reason of the failure to give notice. The conclusion reached by the chancellor, after the hearing three days later, when an opportunity was given to present all matters competent on a preliminary hearing, indicates clearly that notice and hearing would have availed nothing to relators.

We think the demurrer should be sustained. The facts alleged in the bill for injunction are not controverted, and no other facts are pleaded sufficient to show that the circuit court has exceeded or abused its jurisdiction.

The writ will be denied, the rule herein discharged, and judgment entered in favor of respondent for costs. All concur, except *Woodson*, *J.*, who in a separate opinion concurs in the first paragraph and in the result.

## SEPARATE OPINION BY WOODSON, J.

WOODSON, J.—I concur in all that is said by my learned associate, Judge FERRISS, in paragraph one of his opinion filed herein.

I dissent as to that part of the paragraph two, which holds that the business of the relators constituted a public nuisance.

Viewing the pleading in the most unfavorable light for the relators, it is simply shown that they were selling intoxicating liquors without a license in a private room.

That constitutes a crime under the criminal laws of this State, and not a public nuisance in any sense of the word, in my opinion.

However, I confess, that the majority opinion of the court in the case of State ex rel. v. Canty, 207 Mo. 439, holds that such conduct constitutes a public nuisance, to which I then dissented, and still dissent.

But independent of that question, the circuit court of Chariton county had jurisdiction to hear and determine the case, and for that reason, I think the writ should be denied.