STATE OF MISSOURI, ex rel. T. W. ALTON, Prosecuting Attorney of Benton County, Missouri, Respondent, v. E. T. MOFFETT, Appellant.

Kansas City Court of Appeals, October 2, 1916.

1. **INJUNCTIONS: Intoxicating Liquors: Nuisance.** The Prosecuting Attorney of Benton county sought to enjoin the defendant from running a wholsale liquor house, duly licensed. No showing was made that the defendant sold any liquor in quantities less than the law permitted him to sell as a wholesaler, nor was any liquor, thus sold at wholesale, consumed upon the premises of defendant or at places under his direction or control. There was no evidence of the evasion of any law. The liquor house was located near the boundary lines of Johnson, Pettis and Henry counties, in all of which the Local Option Law was in force, and it was charged that the purpose of establishing it so near these counties was to evade that law. The real basis of the action, however, was that the business was conducted in such a way as to constitute the same a public nuisance. It was *held* that the evidence failed to establish the defendant's business was conducted in such a way as to constitute it a public nuisance, which is the only ground upon which a court of equity has a right to interfere in such cases.

2. ———: ———: ———. A business licensed by law, cannot be enjoined and closed up in a court of equity, because of the individual acts of persons alleged to be its patrons, committed away from the place of business and at different times and places. The jurisdiction of a court of equity does not extend that far. If, however, one operates a business duly authorized by law, but conducts it in such a manner as to create a public nuisance, then a court of equity will enjoin him.

Appeal from Benton Circuit Court.—*Hon. C. A. Calvird*, Judge.

REVERSED.

*Geo. F. Longan* and *C. C. Barrett* for appellant.

*T. W. Alton* for respondent.

TRIMBLE, J.—This is a proceeding in equity, an injunction suit, brought in the name of the State at the relation of the Prosecuting Attorney of Benton county,

Missouri, to perpetually restrain and enjoin the defendant from conducting a wholesale liquor house and from selling intoxicating liquor therefrom, at a certain described point in the northwest corner of Benton county, Missouri.

The location of the liquor house is not far from the boundary lines of Johnson, Pettis and Henry counties and about a mile and a half from Windsor in Henry county. In all three of the above named counties the Local Option Law is in force, while Benton county is "wet." It is charged that the purpose in locating the said wholesale liquor house in the corner of Benton county is to evade the Local Option Law in the other counties, and especially the law in force in Windsor. However, the real basis and ground of the suit is that said house and business are maintained and conducted in such a way as to constitute the same a public nuisance. This cause of action is stated in the bill in the following words:

"Plaintiff states that the sale of such intoxicating liquors causes and has caused a large number of idle, lawless, turbulent, dissolute, immoral and dangerous persons, addicted to the use of ardent spirits, to be attracted and assembled at the defendant's said premises and in the public roads and upon lands of other people adjacent to and near by the defendant's said premises, and that by reason thereof much disorderly conduct, tending to destroy the public morals of the community or neighborhood, and to the prejudice of the good name and general welfare of the people, has been indulged in on or about the said premises."

The case was heard on its merits along with a motion to dissolve the temporary injunction. The court overruled the latter and rendered judgment on the former making the injunction perpetual. The defendant has apealed.

There is no contention or dispute over the fact that the defendant is and was a duly licensed wholesale liquor dealer. The only liquor sold by him was lager beer. There is no showing nor claim that defendant ever sold any liquor in quantities less than the law permitted him

to sell as a wholesaler. Nor is it contended that any of the beer thus sold at wholesale was consumed upon the premises of defendant or at places under his direction and control. The case is different from that of State ex rel. v. Lamb, 237 Mo. 437. The pleadings in that case conceded that the parties enjoined were conducting a restaurant as a sham or blind under the guise of which they were selling liquor in violation of law. It was also conceded in that case that the place of business so conducted had "become the resort of idlers and dissolute, immoral and dangerous persons, whose continuous disorderly conduct tends to the injury of the public morals, peace and welfare." This made the business, thus conducted a continuing public nuisance, giving to a court of equity the jurisdiction to restrain and enjoin the same notwithstanding the fact that the acts complained of involved the commission of a crime. However, the mere fact that in the case at bar the defendant violated no law in reference to the sale of intoxicating liquor, would not rob a court of equity of jurisdiction to enjoin the manner in which it is conducted, if such business has been carried on in such way as to create a continuing public nuisance. The bill for injunction in the case at bar makes practically the same allegations concerning the manner in which the business was conducted and its effect upon the community as in the Lamb case (See 237 Mo. p. 444). But the facts have failed to establish the charge that the business as conducted, constitutes a public nuisance.

The evidence fails to show the collection of crowds at or about the defendant's house. Nor is there evidence of noisy, boisterous or disorderly conduct persisted in by persons assembled at the defendant's place of business or upon premises under his control. One witness testified to having seen a number of men at one time sitting around; and it looked like they were drinking and had had a fight, but this was not on the defendant's premises but down in the woods some distance from the road. He admitted on cross examination that he hardly ever saw anyone about the house. Another testified to having upon one occasion seen ten "rigs" hitched there,

but no disorderly or boisterous conduct was mentioned as taking place there. The basis of the complaint of those who testified for the State seems to be, not that crowds of disorderly or noisy persons congregated in and about the place, disturbing the public peace and producing conditions detrimental to the general welfare, but that individuals on the public road between defendant's place of business and the town of Windsor would, under the influence of liquor, render themselves obnoxious by loud and profane language, unseemly behavior, and other disorderly conduct. The time covered by the State's witnesses was the spring, summer and fall of two years and possibly three; and in this time the evidence shows some twenty or more different and widely separated occasions when a man drunk upon the road, or two or three men in a buggy, would act unseemly and do things in violation of the public peace. These things were done by different individuals at different times, and at different places and none of them at or near the premises of the defendant. They were such as rendered the individuals committing such acts amenable to prosecution under the criminal law, but they do not authorize a court of equity to declare defendant's business, which the law has legalized and licensed, a continuing public nuisance and to suppress it on that ground, however deeply one may feel that, in point of morals and moral responsibility, the defendant's business is the fundamental cause of it all. Besides, to constitute a public nuisance there must be an element of *continuity* in the acts complained of and in their effects and results. If the patrons of a *legalized* place of business could make it a public nuisance by their individual conduct on the highway after they have left the premises and control of the proprietor of that business, still the results of that business would have to be so constant in its effects as to constitute a *continuing condition* rather than separate and distinct infractions of the law by the individuals who commit the acts. Consequently, the one gathering of men in the woods, where there seemed to have been

194 M. A.—19

a fight, would not authorize the abatement of a legal business by a court of equity even if the proprietor had obtained authority from the owner of the woods to permit the crowd to assemble there for the occasion. In what has been said we have considered only the State's evidence. The evidence introduced in defendant's behalf shows that the house and premises of defendant was a quiet, orderly place; that no crowds assembled there and nothing out of the way in the shape of noisy, bois-. terous or unseemly conduct ever took place there or thereabouts. One of these witnesses owned property adjoining that of defendant and had formerly been mayor of Windsor. Others whose business was from a half mile to two hundred yards of the wholesale house, and who testified to have been near it a large part of the time, swore that they saw no crowds about the place, no drunkenness and no disorderly conduct. But, taking the case as presented by the witnesses for the State alone, we find that it falls far short of establishing the charge that defendant's licensed business has been conducted in such way as to constitute it a public nuisance, which is the only ground upon which a court of equity has a right to interfere, however desirable it may be from a moral point of view to remove and destroy such business.

With regard to the charge that the house was located at the point in question in order to evade the Local Option Laws in the three adjoining counties, the evidence shows that the defendant had a *legal* right to sell where he did. Courts cannot question the motives of a man when he does only that which the law gives him a right to do. Besides, there is no evidence of any evasion of the Local Option Laws in the said counties. The only situation in that regard, presented by the evidence, is that persons who lived in dry territory and desired to buy beer in Benton county, which was wet, could conveniently and legally buy it at defendant's place of business and carry it to their homes in the dry counties. However reprehensible this may be and however desirable it is to remove such conveniences, a court of equity is not the place wherein that situation can be remedied. If the defendant's business, which has been licensed by

the law, can be enjoined and closed up in a court of equity because of the individual acts of persons alleged to be its patrons, committed away from the place of business and at different times and places, then a licensed saloon can be closed by injunction because some of its patrons afterwards commit lawless acts under the influence of liquor purchased, according to law, at the saloon. The jurisdiction of equity does not extend that far.

Since the evidence fails to show the defendant's business to have been a public nuisance within the meaning of the law as applied to a situation which will authorize the intervention of a court of equity to suppress it, the judgment must be reversed and the injunction dissolved. It is so ordered. The other judges concur.