**STATE of Missouri, ex rel. Michael E. REARDON, Respondent,**

v.

**Thomas M. BRANDOM, et al., Appellants.**

**No. WD 54635.**

Missouri Court of Appeals, Western District.

Aug. 4, 1998.

188

Allan V. Hallquist, Kansas City, for Appellants.

Brian J. Klopfenstein, Asst. Pros. Atty., Clay County, Liberty, for Respondent.

Before ELLIS, P.J., and LOWENSTEIN and RIEDERER, JJ.

LOWENSTEIN, Judge.

The appellants here are Thomas Brandom, Jay Lawson, and Gene Owen, the elected commissioners of Clay County. (Hereinafter the "Commission") Clay is a first class county, it does not have a charter form of government, and has more than 100,000 in population. The Commission appeals the trial court's judgment enjoining it from using public funds to compensate the Clay County Counselor and Assistant Counselors.

The respondent, Michael Reardon, who brought this action, is the Prosecuting Attorney of Clay County. Reardon, in the name of the State of Missouri, and on behalf of the citizens and taxpayers of the county, sought an injunction to prevent an alleged illegal, unlawful and unauthorized expenditure of public funds by the Commission to pay the county's counselor and his assistants. At the heart of this case is whether a county can enter into a contract to pay its counselor and assistants on an hourly basis or if the county is required to pay a fixed salary.

Prior to the contracts at issue, in March of 1995, Clay County entered into a contract with Tom Kretsinger making him the County Counselor. Kretsinger had been acting as the County Counselor since 1992. The contract was signed by Kretsinger and Gary Panethiere, County Administrator. The contract was for an indefinite term, at a salary of $48,000 per year and "fees billed." At the same time, Panethiere, on behalf of Clay County, entered into almost identical contracts with Stephen Caruso, Timothy Flook, and Kevin Graham, in which they were named Assistant County Counselors with annual compensation of $30,000, $18,000 and $12,000, respectively. Flook and Graham also practiced law in the offices of Kretsinger and Kretsinger, a professional corporation. Caruso is a solo practitioner.

In December of 1996 Kretsinger advised Panthiere that he was resigning as County Counselor. He did not feel that he was being properly compensated for his services, and he wanted to be paid by the hour. The following is an excerpt from Panethiere's testimony at trial.

Q. And were the discussions and the agreement with Mr. Kretsinger re-

garding the hourly compensation, did those occur after he originally advised you that he was going to resign as County Counselor?

A. Oh, definitely.

Q. Who first brought up the idea of switching to an hourly rate?

A. I believe Tom first probably brought it up.

Kretsinger expressed to Panethiere that by switching to an hourly rate the county would save money. However, Commissioner Owen testified that he asked Kretsinger what he thought his salary would be if the county went to an hourly rate, and that Kretsinger told Owen that he thought his salary would double.

In December of 1996 the Commission entered into the contract in question, whereby Kretsinger would be compensated as county counselor at an hourly rate, rather than an annual salary. The Commission agreed to pay Kretsinger, as a senior attorney (10 or more years experience), the sum of $125.00 per hour; associate attorneys (less than 10 years experience) the sum of $100.00 per hour; and paralegals the sum of $60.00 per hour. The contract stated that the County Counselor was an independent contractor and not an employee of the county. The term of the contract was for three years, and provided that if the county terminated the contract within three years Kretsinger would receive $50,000 in liquidated damages. The Commission delegated the duty and responsibility of appointing assistants or special county counselors to the County Counselor and the County Administrator. Kretsinger then appointed two of his own employees as Assistant County Counselors.

During 1996, Timothy Flook was assistant county counselor at a rate of $100.00 per hour under a contract entered into with the County Administrator. Flook was then and is now an employee of Kretsinger and Kretsinger. Under a similar contract, Kevin Graham was assistant county counselor during 1996 at a rate of $1,500 per month plus unspecified fees and expenses. Likewise, Graham was then and is now an employee of Kretsinger and Kretsinger. Both men were each paid by the firm $1,000 per month and 50% of all the fees they brought into the firm from all sources including Clay County.

Stephen Caruso and Ronda Reems were also Assistant County Counselors in 1996 under contracts signed by the County Administrator. They were both given independent contractor status and both had contracts which could be terminated at will by either party. Reems was to be paid $1,500 per month. Caruso originally was to be paid $2,500 per month, but some time during 1997 he signed a new contract at a rate of $125 per hour. Caruso and Reems have never been employees of Kretsinger & Kretsinger.

Reardon's suit alleged the December 1996 contracts were illegal because they violated § 50.340 RSMo.[1] 1994 and § 12 of Article VI of the Missouri Constitution, which provides that all county officers in all counties of the first class, "... shall be compensated for their services by salaries only."

The trial court held that: (1) the Commission must pay the County Counselor a *fixed salary* rather than compensation *by the hour*, and (2) the Counselor should be appointed as an officer of the county and not given the status of an independent contractor. The court enjoined the Commission from expending any further public funds under the contracts between Clay County and Tom Kretsinger and assistants Caruso, Reems, Flook, and Graham.

■ The Commission appeals the Order on two points. First, it contests Reardon's standing to bring suit against them on behalf of the State of Missouri, and second, argues the trial court erred in holding that the county counselor and assistant county counselors may not be compensated on an hourly basis. The Commission does not contest the trial court's finding that the county counselor and assistant counselors are officers of the county rather than independent contractors. The parameters for appellate review of a bench-tried case are narrowly drawn. *Ederle v. Ederle*, 741 S.W.2d 883, 885 (Mo.App.1987). The decision of the trial court must be affirmed unless there is no substantial evidence

1. All statutory references are to RSMo.1994 unless otherwise indicated.

to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## Point I

The Commission's first argument is that Reardon did not have the authority as Prosecuting Attorney for Clay County to bring this civil action on behalf of the state. The Commission cites § 56.060(2) which says that the prosecuting attorney does not have the authority to perform duties prescribed by law for the county counselor. Essentially, the Commission's point is that only the County Counselor had the authority to bring this action to stop the funding of his own office. Section 56.060(1) says "the prosecuting attorney shall commence and prosecute all civil ... actions in his county in which the ... state is concerned...." Because the issue at hand in this case is the spending of public funds, the court rules that Reardon had the authority as the prosecuting attorney to bring this action.

In *State ex rel. Thrash v. Lamb,* 237 Mo. 437, 141 S.W. 665 (1911), the Court held that a prosecuting attorney of a county is the legal representative of the State and as such may institute a civil suit for injunctive relief on behalf of the State. The Court stated that:

> since 1868 the statutes have been substantially as they are now; ... authorizing the prosecuting attorney to commence proceedings in matters concerning the state within his county ... It is clear that, if the prosecuting attorney acts at all ex officio, he must act for and in behalf of the state. *Id.* 141 S.W. at 669.

In the case of *Matthis v. Inhabitants of the Town of Cameron,* 62 Mo. 504 (Mo.1876), the Court held that the State, through the Attorney General or prosecuting attorney, was authorized to institute a civil proceeding for an injunction to prevent the illegal expenditure of public funds. *Id.* at 505. In this case, Reardon acted as prosecuting attorney on behalf of the state to prevent what he believed to be the illegal expenditure of public funds, and the trial court correctly ruled that he had the authority to do so.

## Point II

The Commission's second argument is that the trial court erred in holding that a county counselor could not be paid by the hour in Missouri. This argument fails because a county counselor, by statute, is to be compensated by *salary.* The trial court ruled, and this court agrees, that an hourly wage was not an appropriate form of compensation for the Clay County Counselor and his assistants. Note, however, the recent legislation passed by the General Assembly which is explained *infra.*

Section 56.650 provides that the County Counselors "shall receive as compensation such salary as is fixed by the county counselor and approved by the county commission." The Commission argues that it is completely up to the county commission to decide how to compensate the county counselor and assistants. There is, however, further guidance in the Missouri Constitution and in the statutes.

Article VI, § 12 of the Missouri Constitution provides, "all state and county officers ... shall be compensated for their services by salary only." Likewise, § 50.340 says that "county officers ... shall be compensated for their services by salary only." It is clear that county officers are to be compensated by salaries, the only remaining question is what is a salary?

In *State ex rel. Attorney General v. Speed,* 183 Mo. 186, 81 S.W. 1260, 1263 (1904), the Court held "when the word salary is found in a legislative act as applied to one's compensation for official work done or required, it is so generally understood to apply to the officer's per annum allowance, when not otherwise qualified, that we are justified in attributing that meaning to the word." It is clear that when the legislature specifies compensation be in the form of a salary, an hourly wage does not qualify as such.

This court agrees with the respondent's argument that a salary refers to a public or county officer's yearly compensation, and is not the same thing as an hourly fee paid for services. In the case of *St. Louis Fire Fighters Ass'n, Local No. 73, AFL–CIO v.*

*City of St. Louis,* 637 S.W.2d 128 (Mo.App. 1982), the court stated that "salary is a periodic allowance made as compensation to a person for his official or professional services or his regular work." *Id.* at 130. This court finds that an hourly wage does not satisfy this definition. "Salary" is defined in Black's Law Dictionary as "a reward or recompense for services performed. In a more limited sense, a fixed periodical compensation paid for services rendered. 'Stated compensation' paid periodically as by the year, month, or other fixed period is, *in contrast* to 'wages' which are normally based on an hourly rate." The appellants' argue that an hourly wage can be a form of salary. This court disagrees.

The trial court found, and this court holds, that the term "salary" as used in the Missouri Constitution and § 50.340 RSMo connotes a fixed sum for a fixed amount of time regardless of the amount of work done in that period of time. *See State v. Cowan,* 284 S.W.2d 478, 481 (Mo.1955).

 At oral argument, the attorney for the Commission advised the panel of HB1586 which had been truly agreed to and finally passed at the Second Regular Session of the 89th General Assembly which adjourned May 30, 1998. After submission, the court received a letter from the attorney advising that HB1586 had been signed by Governor Carnahan. Interestingly enough, HB1586 which would have an effective date of August 28, 1998, would so provide in chapter 56 that a first class county without a charter could (1) contract with a private attorney for provision of nonprosecutorial legal services, payment to be governed solely by the contract for services, and the attorney would be considered an independent contractor. The Commission asserts this legislative action moots the judgment of Judge Connett dated June 10, 1997. The passage of HB1586 further buttresses the injunction entered with regard to the contract of the counselor and of the assistants. These contracts were invalid at the time when made, and were invalid at submission of this case and the date of this opinion, therefore, this court can grant relief. *State ex rel. Missouri Telecommunications, Ass'n. v. Missouri Public Service Com'n,* 929

S.W.2d 768, 771 (Mo.App.1996). A change in the statute following this appeal will not validate the December 1996 contracts. The issues underlying this appeal are not moot, although this opinion will have limited viability after the new law takes effect, and it can be assumed new contracts could be executed for the provision of future legal services to Clay County.

The judgment is affirmed.

All concur.