State *v.* Spurgeon. ,

STATE *v.* SPURGEON.

99 659
f116 316

(*Knoxville.* November 17, 1897.)

1. COMPTROLLER. *Has no power to employ counsel to represent State in Supreme Court.*

The Comptroller has no power to employ counsel to assist the Attorney-general in the State's civil litigation in the Supreme Court.

Constitution construed: Art. VI., Sec. 5.

Acts construed: Acts 1879, Ch. 218; Acts 1891, Ch. 60; Acts 1865, Ch. 23.

2. ATTORNEYS. *Not entitled to lien upon recovery for fees.*

An attorney employed by the Comptroller to assist the Attorney-general in civil litigation of the State in the Supreme Court is not entitled to a lien upon the State's recovery for fees, nor to be paid for such services out of the recovery or other funds belonging to the State.

Acts construed: Acts 1865, Ch. 23; Acts 1879, Ch. 218; Acts, 1891, Ch. 60.

Code construed: § 287 (S.); § 268 (M. & V.); § 235 (T. & S.).

FROM WASHINGTON.

Appeal from Chancery Court of Washington County. HUGH G. KYLE, Ch.

Attorney-general PICKLE, BUTLER & MCDOWELL, C. J. ST. JOHN, and C. T. CATES, JR., for State.

N. M. TAYLOR, KIRKPATRICK, WILLIAMS & BOW-
MAN, for Spurgeon.

BEARD, J.   The defendant, John R. Spurgeon,
was a surety on the official bond of one Branscomb,
a Tax Collector of Washington County, who de-
faulted in 1874 for a large amount of revenue due
the State.   The bill in this case was filed in 1893,
charging that, in view of his liability on the bond
of the defaulting officer, and in order to escape it,
Spurgeon, soon after discovering the amount of this
default, made a trust deed of all his property, con-
sisting of valuable real estate lying in Washington
and Sullivan Counties, with the purpose, shared in
by the beneficiary of the conveyance, of hindering,
delaying, and defrauding the State in the collection
of its claim; and the prayer of the bill was that
this deed might be set aside as void and the prop-
erty covered by it be subjected to the payment of
the State's demand.   Other matters or questions
became involved in the controversy, brought into the
cause by an intervening petition, which it is not
necessary to set out.   It is sufficient for our pres-
ent purpose to say, that at this term an opinion
has been delivered affirming the decree of the Court
of Chancery Appeals, adjudging this trust deed to
be fraudulent and void, and ordering the property
conveyed by it to be sold and its proceeds to be
applied to the payment of the claim of the com-
plainant.   Since this opinion was handed down a

decree has been presented to us embodying the con-
clusions and directions of this Court, but reserving
a lien on the recovery in favor of a number of
solicitors for services rendered in this cause, and a
motion has been made that the same be entered.
These gentlemen make this claim upon their employ-
ment by the Comptroller of the State, and the ques-
tion for determination is, has that officer power to
bind the State by entering into such a contract,
and, if he has such power, then as to boundaries
of it? It is beyond doubt, until within recent years,
that the duty of attending to all litigation in which
the State was interested was devolved upon the Dis-
trict Attorneys of the several Circuit Courts and
upon the Attorney-general of the State.

In 1865 the first departure from a long estab-
lished system was made by the passage of an Act
providing for the employment of additional counsel
to the Attorney-general or District Attorney, when in
the judgment of the Governor and Attorney-general,
the interests of the State required it, and for the
compensation of such attorneys. This was an emer-
gency statute, possibly made necessary in the liquida-
tion of the Bank of Tennessee with its various
branches, though in its second section it was couched
in general terms. In 1879 the Legislature made a
more radical departure by the passage of an Act,
which, with Act amendatory thereof, will be noticed
hereafter. While the office of Attorney for the
Courts of the State having criminal jurisdiction was

recognized by Secs. 5 and 6 of Art. 6, of the Constitution of 1834, that of Attorney-general for the State was not, but was, as it at present substantially exists, created by Ch. 51 of the Acts of 1835. The Constitution of 1870, Sec. 5, Art. 6, makes provision for both offices; the latter becoming for the first time what the former had been since 1830, a constitutional office. This section, however, while providing for the appointment of the Attorney-general and Reporter by this Court, and for the election of the attorneys of the State for the various districts or circuits, does not prescribe their duties.

But the powers conferred and the duties imposed upon the incumbents of these offices had been long defined by general laws and were at that time thoroughly understood. As to the office of Attorney-general the Act of 1835 creating it had first fixed its powers and duties; these were afterwards supplemented by other Acts. Among these duties so imposed was that of attending to "all business of the State, both civil and criminal, in the Supreme Court." These statutes were brought with but slight changes of phraseology, into the Code of 1858, at Sec. 3952, and were in existence at the time the Constitution of 1870 was promulgated. The question has been raised in argument as to how far the Legislature can go in stripping these constitutional officers of the functions attached to their respective offices, at the time the Constitution of 1870 was

adopted and conferring them on others, whether they be appointees of the Comptroller or are otherwise chosen, but we are not called upon on this record to answer it. While it is not necessary in this case for us to intimate an opinion on this very important question, yet in this application for the reservation of a lien it does become essential to examine the legislation of the State to ascertain the limits of the Comptroller's power in the employment of attorneys in suits like the present.

In 1879 the Legislature passed the Act above referred to, entitled "An Act to facilitate the collection of State revenue." By this Act the Comptroller was authorized to employ an attorney or attorneys, and send him or them into any county in the State, with full power to investigate the records and books of any officer charged with the duty of collecting revenue, and the attorney or attorneys so employed had, under the Act, "full power and authority to bring, in the name of the State, by motion or otherwise, any and all suits necessary to enforce the collection of any revenue due the State, and to compromise and settle all suits for or on account of such uncollected revenue," etc. Ch. 218, Acts 1879. The Legislature of 1891 passed an Act (Ch. 60) amendatory of the one just mentioned, entitled "An Act to amend Chapter 218, page 262, of the Acts of 1879, entitled 'An Act to facilitate the collection of State revenue.'" This amendatory statute, in effect a reinactment of the original Act, so far as that

had conferred the right of appointment upon the Comptroller of an attorney or attorneys to be sent by him through the State to look after its officers engaged in the collection of revenue, in important particulars materially increased the powers of those so appointed. As it was upon the authority of these two Acts the employment in question was made, it is not necessary for us to consider Sec. 88, Ch. 1, of the Session Acts of 1897, by which the District Attorneys and the Attorney-general of the State are reduced to the position of mere assistants of the revenue agents selected by the Comptroller in such suits as they institute within the limits of that section.

Upon an examination of the Act of 1879, and the amendatory Act of 1891, it will be found that the attorney or attorneys commissioned by the Comptroller under these Acts, while authorized to institute, among others, all suits necessary to enforce the collection of revenue from defaulting officers, yet there was no provision made in them, even if it could constitutionally have been done, for these attorneys representing in this Court such of these suits as might be appealed to it. In the absence of an express statute, it will not be presumed that the Legislature intended that these appointees should follow litigation so instituted by them into this Court. On the contrary, it must be assumed that its purpose was, after the suits reached here, to leave the duty of attention to them where it was placed by the

Act of 1835, and where it has since continued, by unbroken statutory provisions (unless it be that the Act of 1897 makes a change), to rest—that is, upon the Attorney-general of the State. Taking this view of the statutes bearing upon this question, we are clear there is no authority whatever for the employment by the Comptroller of attorneys to represent the State in this Court, and this of itself is a sufficient answer to the motion to reserve a lien for services so rendered.

There are two other objections, however, to this motion, either of which is sufficient to warrant us in declining to entertain it. The first is that the only provision for the payment of the attorney or attorneys employed under the authority of these Acts is found in the body of the original Act (Ch. 218, Acts 1879). That provision is in these words: *"Be it enacted,* That such attorney or attorneys so employed shall receive no compensation other than that allowed by the Comptroller, subject to the approval of the Governor, to be paid out of any funds 'collected' by them, which compensation shall 'not exceed fifteen per cent. of the entire amount collected,' to be retained by them, or paid by the Comptroller out of the fund collected before payment into the State treasury." Attorneys so employed must look alone to the terms of this clause to ascertain their right to compensation. Compensation depends upon a collection; until this is made they have no claim. When the collection has been made compensation must

be allowed by the Comptroller, subject to the approval of the Governor, and then in no case, and however many attorneys have been employed, can it exceed fifteen per cent. of the entire amount collected.

In the next place, even if this statute was not restrictive in its terms, as has just been indicated, a sound public policy would forbid placing such a burden as is here proposed on the State's recovery. All other persons who have claims against the State for services rendered, or resting on any other ground, obtain payment alone on warrants issued upon the treasury, and even then the settled law is that ''no money shall be paid out of the public treasury unless the law or laws under which the same may be claimed or demanded shall expressly direct and order that it shall be paid out, and unless the warrant shows the name of the person in whose favor it is drawn and the statute or authority under which it is issued.'' Sec. 287, Shannon's Code. Independent of every other objection, to grant the present motion in the absence of an express statute authorizing it, would be to violate the spirit, if not the letter, of this provision of the law.

For these reasons, the motion is overruled and a decree will be entered as has been heretofore directed.