[No. 3380.   Feb. 18, 1929.]

STATE v. DAVIDSON et al.

[275 Pac. 373.]

M. A. Otero, Jr., Atty. Gen., and E. C. Warfel, Asst. Atty. Gen., for the State.

C. H. Gilbert and M. W. Hamilton, both of Santa Fe, for appellees.

## OPINION OF THE COURT

PARKER, J. This is a suit by the state seeking to enjoin the members of the state highway commission, the state highway engineer, and the state auditor from approving a voucher in the sum of $215 issued in favor of the appellee Gilbert in payment for legal services rendered by him for the state highway commission during the month of November, 1927. An injunction was also sought against the state treasurer to restrain him from paying, and against the appellee Gilbert to restrain him from accepting payment of any warrant which might be issued on such voucher. A temporary injunction was issued by the court as prayed for in the complaint. The appellees answered in due course, and after trial judgment was rendered in their favor dissolving the injunction. From that judgment the present appeal was taken.

Although exceptions were saved to various findings of fact made by the trial court, the correctness of those findings is not challenged here, nor is the evidence presented here for review by bill of exceptions or other appropriate mode. The findings of the trial court are therefore conclusive upon this appeal. Upon those findings and the pleadings, the following facts are established:

The state highway commission is charged with the duty of, and actually engaged in the constructing, improving, and maintaining of, the system of state highways. In that connection it is exclusively engaged in conducting and carrying out matters of a general business nature rather than of a governmental nature. In connection with its work, it is required to handle extremely large sums of money, for

the legal and proper expenditure of which the state high-
way engineer is responsible personally and upon his official
bond. The work of the highway commission concededly
could not be carried on with efficiency and safety either
to the state, the public, or the officials of the highway
department, without the constant, prompt, and efficient
advice and guidance of a competent attorney.

The needs of the highway department in regard to legal
services are much broader in their scope than the statutory
duties of either the Attorney General or the district at-
torneys of the state. The other manifold duties imposed
by law upon those officials are such that it would be im-
possible for them to care for the legal needs of the high-
way department, and it thus became impossible for that
department to properly discharge its duties without the
employment of special counsel. In this connection, the
trial court found that the employment of such special
counsel has been greatly to the advantage of the state, and
that "it would entail great loss upon the State of New
Mexico, and render impossible the safe, proper or efficient
operation of said department to prohibit such employment
by it."

Under these circumstances, the appellee Gilbert was em-
ployed as special counsel for the highway department. It
is conceded that he is an attorney in good standing before
the courts of this state, and that the services performed
by him for that department were actually worth the
amount of his charges.

In employing special counsel, the highway department
was merely continuing an established practice which had
been carried on without question for many years. In this
connection, the following is admitted by the pleadings:

"For many years prior to the employment of the defendant,
Gilbert, as alleged in the complaint herein, and practically since the
creation of said state highway commission, the said commission
and the state highway engineer of the State of New Mexico have,
from time to time, when necessity therefor has arisen, employed
special legal counsel to advise and represent them in the conduct
of their official duties; and that said special counsel have uni-
formly been compensated for such services from the public monies
of the State of New Mexico under the control of said state high-
way commission, and that such custom has been well known to

and acquiesced in by all interested persons and by the public at large during all of said time."

It is first contended by the state that the office of Attorney General, having been created by our Constitution without the enumeration of the powers and duties appertaining thereto, became thereby vested with all powers and duties inhering to that office at common low. The appellant further contends that the employment of special counsel by any agency of the state would result in a partial taking from him of those common-law powers and duties, and could not therefore be constitutionally authorized by statute. In support of these contentions, the appellant relies largely upon the case of Fergus v. Russel, 270 Ill. 304, 110 N. E. 130, Ann. Cas. 1916B, 1120, which holds that the creation of the office of Attorney General by the Constitution of Illinois invested that office with common-law powers and duties which could not later be transferred by statute to any other department of the state .

The doctrine of common-law power in the Attorney General appears to have originated in New York, and to have grown out of the peculiar conditions surrounding the formation of the governments of the original thirteen colonies. The leading case upon that doctrine is probably that of People v. Miner, 2 Lans. (N. Y.) 396. The New York court there said :

"The office of Attorney General had existed several centuries in England before the formation of the Colonial Government in this country, and his duties were well understood, and clearly defined.

"Most, if not all, of the colonies appointed Attorneys Generals, and they were understood to be clothed, with nearly all the powers, of the Attorneys Generals of England, and as these powers have never been defined we must go back to the common law in order to ascertain them. * * * As the powers of the Attorney General, were not conferred by statute, a grant by statute, of the same or other powers, would not operate to deprive him of those belonging to the office at common law, unless the statute, either expressly, or by reasonable intendment, forbade the exercise of powers not thus expressly conferred. He must be held, therefore, to have the powers belonging to the office at common law, and such additional powers as the legislature has seen fit to confer upon him."

It is apparent from this case and the others cited that this doctrine of implied common-law powers in the Attorney General is based upon the existence of the specific

fact that that office in a particular jurisdiction existed prior to any statutory definition of its powers, and, while so existing, such officer was recognized as having all powers appertaining to that office at common law. As a deduction from this premise, the New York court holds that a later statutory grant of powers to the Attorney General will not be construed as showing a legislative intent to deprive that office of prior existing common-law powers not enumerated in such statute. In the case of Fergus v. Russel, supra, the Illinois court merely carries this doctrine one step further in holding that the creation of the office of Attorney General by the Constitution, without any attempt therein to define its powers, constitutes by implication a constitutional confirmation of the common-law powers so inhering in such office, notwithstanding the fact that certain of its powers had been previously enumerated by statute.

We are not concerned here with the correctness of this doctrine, for it is clearly inapplicable in this jurisdiction. It is a doctrine of presumptions, and constitutes a departure from the general rule of expressio unius exclusio alterius. It is based entirely upon the initial premise that the Attorney General was recognized as being vested with common-law powers before any attempt was made t enumerate or define his powers by statute. In New Mexico, the converse of this condition exists. The powers and duties of the Attorney General were enumerated by the very statute which created that office. Kearny Code, C. L. 1884, p. 90. This was long prior to the adoption of the common law in this jurisdiction. The office itself was abolished in 1889, and the office of Solicitor General created in its stead. Chapter 56, Stats, 1889. By chapter 118, Stats. 1905, the title of the office of "Solicitor General" was changed to that of "Attorney General," but it was specifically provided by that statute that:

"This act shall not be construed to change or in any way interfere with the powers and duties of the Solicitor General as now provided, by the acts of Congress or the Territorial legislature." Section 1.

It will thus be seen that the office of Attorney General in New Mexico was created by statute, and its powers and

duties defined and limited by statute from its inception. We therefore hold that the doctrine upon which the state relies is inapplicable here, and that no common-law powers were confirmed in the office of Attorney General by our Constitution. This holding is in accord with our previous decision in the case of State ex rel. Clancy v. Hall, 23 N. M. 422, 168 P. 715, where the identical question was presented. We there said:

"It is next contended that the act in question is in violation of the constitution of the state, in that it attempts to transfer the duties of the attorney general of the state to undesignated individuals, who are not law officers of the state of New Mexico. There is no merit in this contention. The state constitution does not prescribe the duties of the attorney general, and it must be evident that the legislature, unless limited by some direct constitutional provision, has the power to direct how, when, where, and by whom the state shall be represented in all matters, whether of litigation or otherwise."

The Attorney General next contends that the employment of special counsel by the state highway commission is beyond the power conferred upon that body by law.

The state highway commission was created by the Act of March 16, 1909 (section 2631, Code 1915). By that act it was vested with authority as follows:

"The Commission shall also have authority to employ, remove and fix the salaries of engineers, experts, clerks, stenographers and temporary employees as may be necessary to carry on. its work, and may assign such duties and delegate such authority to employes as it shall deem advisable." Code 1915, § 2632.

The commission was recreated by chapter 38, Laws 1917. This statute specifically reserved to the commission all of the powers granted to the old highway commission by the 1909 act, and, in addition, conferred the following powers:

"That the State Highway Engineer, with the consent and approval of the State Highway Commission, may appoint and fix the compensation of such assistant engineers and clerks, and employ such other help, as may be necessary to the proper conduct of the work of the Commission, under the provisions of this act." Section 5.

It will be noted that the foregoing sections authorize the highway department to employ such experts and temporary employees as may be necessary, and to also employ such "other help, as may be necessary to the proper con-

duct of the work of the Commission." It will also be noted that the purposes for which the "other help" may be employed are left largely to the discretion of the commission; it being authorized to "assign such duties and delegate such authority to employees as it shall deem advisable." Statutory provision is also made for the payment of such employees from the state road fund.

This legislative authorization is amply sufficient to cover the employment of special attorneys if grammatical construction alone be considered. This the Attorney General does not deny, but he contends that, although such statutory authorization would be sufficient to cover the employment of specialists of other classes, it must be so construed as a matter of law as to exclude the employment of special attorneys in the absence of a specific designation of such persons in the statute. In determining the question thus presented by the state, the circumstances surrounding the enactment of the legislation in question should be considered:

"The rule announced in Kent's Commentaries, § 462, for the interpretation of statutes, and generally followed by the courts, is as follows: 'When the words are not explicit, the intention is to be collected from the context, from the .occasion and necessity of the law, from the mischief felt, and the objects and remedy in view; and the intention is to be taken or presumed, according to what is consonant to reason and good discretion."

State ex rel. Lorenzino v. County Commissioners of McKinley County, 20 N. M. 67, 145 P. 1083, L. R. .\. 1915C, 898.

As we have heretofore pointed out, the highway commission as created was charged by the Legislature with the performance of extensive duties of a business nature, involving, among other things, the expenditure of large sums of money. The statute imposing these duties required the state highway engineer, as executive head of the department, to give bond to secure the state against the misappropriation of these departmental funds. He would be liable both personally and upon such bond for any such misappropriation, irrespective of the good faith with which it might be made. It must be self-evident that the highway department could neither safely nor efficiently discharge the duties thus imposed upon it without the con-

stant legal assistance of a competent attorney, and such was found to be the fact by the trial court. It is a general rule of statutory construction that, where the Legislature imposes specific duties upon an agency of the state for the purpose of accomplishing specific objects, it thereby confers by implication all powers necessary to the proper discharge of those duties. Such was the holding of this court in the case of State ex rel. Clancy v. Hall, 23 N. M. 422, 168 P. 715, where we said, in answer to a somewhat similar contention:

"In answering this objection it may be stated that, when statutes confer powers, impose duties, and provide for the accomplishment of various objects, they are necessarily couched in general terms; but they carry with them, by implication, all the powers, duties, and rights necessary to accomplish the objects thereby sought to be attained."

As we have heretofore stated, the needs of the highway department in the way of legal assistance extend beyond the scope of the duties of the regular law officers of the state. It is moreover an established fact in this case that those officers cannot take the time from their official duties to serve that department's needs. These facts will be presumed to have been known to the Legislature when the legislation here under consideration was enacted in 1917, for, as found by the trial court, the practice of employing speical counsel has been carried on by the highway department practically since its creation in 1909, and was well known to and acquiesced in by all interested persons and the public at large. Under these circumstances, we are constrained to hold that the Legislature, in enacting *chapter 38, Laws 1917, had in contemplation that the state* highway commission might find it necessary to employ special counsel from time to time and intended to confer such power upon that department when it authorized the state highway commission to "appoint and fix the compensation of such * * * other help as may be necessary to the proper conduct of the work of the commission under the provisions of this act."

The power to employ special counsel has frequently been upheld by courts of other jurisdiction in cases where the surrounding circumstances were less pursuasive than in the case at bar. Thus, in the case of Miller v. Wash-

ington County, 143 Tenn. 488, 226 S. W. 199, the Supreme Court of Tennessee construed a somewhat similar grant of powers to highway commissioners as follows:

"While the act did not expressly vest in the commission the power to institute suits necessary in carrying out the purposes of the act and to employ counsel in such suits, it did expressly clothe said commission with the power and authority to do all things necessary to carry out the purposes of said act, and we think the power to employ counsel and institute any suit that might be necessary to enable them to accomplish the purposes of the act is a necessary incident to the powers expressly conferred upon the commission. The commission created by said act to carry out its purposes will be treated as a quasi public corporation, and was not therefore restricted to the exercise of powers expressly conferred upon it by the act creating it, but was clothed with such implied powers as were necessary to carry out the powers expressly granted, and to accomplish the purposes for which it was created."

The same conclusion was adopted by the Supreme Court of New York in the case of Duntz v. Duntz, 44 Barb. (N. Y.) 459. The syllabus in that case reads as follows:

"Commissioners of highways are authorized to employ counsel in the preparation and trial of an indictment against an individual for obstructing a public highway, and to render other legal services in relation to matters connected with the control and management of highways. Such authority is incident to their official character."

In the English case of Hall v. Taylor, 120 Eng. Rep. Reprint 447, the commissioners of the township of Stalybridge employed special counsel to represent them in connection with certain road matters under a general statutory authorization quite similar to that here at issue. The commissioners having refused to pay their special counsel suit was brought for breach of the contract of employment. The English court disposed of the question of the power to employ special counsel as follows:

"If the contract is within such scope (of the statute granting power) the procedure for such breach is the same as in all actions on contract with all ordinary incidents, except that a nominal party represents the fluctuating body (board of commissioners) and the execution of the judgment is modified. Therefore, the substantial question is whether the contract here sued on is within the scope of the statute; and the answer is in the affirmative. *Section 12 specifies the services of a clerk and other officers as requisite;* and other sections giving large and various powers for the exercise of which legal advice would often be required by implication give the power of retaining an attorney; although there are several sections specifying powers of contract in certain cases, there is no prohibition of contracts in cases not specified."

In the case of Quintard v. City of New York, 51 App. Div. 233, 64 N. Y. S. 904, the court was called upon to determine whether or not a statute authorizing a board of charities and corrections to "appoint and remove from time to time store-keepers and all other officers, subordinates and assistants necessary for the proper discharge of their duties under this act and by law" was sufficiently broad to include employment of special counsel. The court there said:

"This language is broad enough to warrant the employment of counsel, either temporarily, as the necessity for his services might arise, or permanently, at a fixed rate of compensation."

We believe the above cases state the correct rule, and therefore hold that the state highway commission and the state highway engineer of New Mexico did not exceed their statutory powers in employing special counsel, unless expressly forbidden by statute.

█ The appellant, however, contends that section 1860, Code 1915, is of controlling force in the premises. This is section 15 of chapter 22, Laws 1909, and is as follows:

"No one shall represent the state or any county thereof in any matter in which he may be interested, except the district attorney, his legally appointed and qualified assistants, or the attorney general or his legally appointed and qualified assistants, and such associate counsel as may appear on order of the court with the consent of the district attorney or attorney general except in cases where the district attorney is absent and has no assistant present to attend to such business, or in cases where the district attorney and his assistant may for some reason be disqualified or refuse to prosecute, in which case the court shall appoint a competent person to represent the county or State, who shall receive the fees herein provided."

A reading of this section shows that a mistake was made by the Legislature in the use of the pronoun "he" instead of "they." It is hard to believe that the Legislature intended to provide that the Attorney General or a district attorney might represent the territory or a county in a case in which he was interested. If so, if he were indicted for crime, or was being sued by the state or a county for money due it, he might still represent the territory or the county. On the other hand, if the pronoun "they" be inserted, it refers to the nouns preceding it, and

the whole section is rendered sensible and harmonious. This is to be done in this case, and is what is termed in the books as exceptional construction of statutes. While such construction is to be resorted to and employed with great caution, it is recognized as allowable in this jurisdiction. Baca v. Bernalillo County, 10 N. M. 438, 62 P. 979. This case has stood unquestioned since it was decided in 1900. It follows that the Attorney General's office or the district attorney's office must represent the state, or a county, in any matters in which they may be interested, with the exceptions mentioned in the statute.

The question then is as to what is meant by the section. It is perfectly apparent that the statute refers only to proceedings in court. It contemplates that application shall be made to the court in which some case may be pending for the appointment of associate counsel with the consent of the district attorney or Attorney General, or in case of disqualification of, or refusal to act by, the district attorney, the court may appoint such special counsel. It is therefore only in suits in court by the state or a county, and where special counsel seek to represent the state or a county, that the section in question has any application. The voucher here in question covers no services of that character.

It follows that the judgment of the district court was correct, and should be affirmed, and the cause remanded, and it is so ordered.

BICKLEY, C. J., and WATSON, J., concur.