(No. 6515.   October 1, 1938.)

HUGH E. HOWARD, Respondent, v. IRWIN C. COOK, INA R. COOK and STATE OF IDAHO, Appellants.

[83 Pac. (2d) 208.]

J. W. Taylor, Attorney General, D. W. Thomas and Lawrence B. Quinn, Assistant Attorneys General, for Appellants.

A. J. James, for Respondent.

GIVENS, J.—In 1903, Mrs. Adelade B. Hodgman owned the SE¼ of Section 30, Tp. 2 S. R. 21 E. B. M. and was, by what is termed the Woodworth decree (District Court of Blaine County, then Logan, fourth Judicial District, November 28, 1892), adjudicated 180 inches of water with priority of June 14, 1883, expressly made appurtenant to said quarter section.   Philip Shanahan, as owner of the S½NE¼ of said

section, was therein decreed 50 inches of water with a priority of May 15, 1885, the same being specifically made appurtenant to his land.

In 1909 Mrs. Hodgman was the owner of both above described tracts when the so-called Frost Decree (on demurrer, *Frost v. Alturas Water Co.*, 11 Ida. 294, 81 Pac. 996; final adjudication, District Court for Lincoln County, Fourth Judicial District, December 13, 1909) was entered, confirming generally the above priorities:

" ' . . . . It is Further Ordered, Adjudged and Decreed that the respective parties, plaintiffs and defendants, in the various actions named in the Findings herein, . . . . they and their successors in interest, be and they are hereby awarded the right to the use of the waters of Big Wood River and its tributaries, and the various dry streams named in said decrees, to the extent that they are respectively awarded such use in the various actions and decrees to which they are parties, respectively; but that this right shall not be construed to be a double appropriation of the waters of said streams, and wherein the said parties are reawarded such amounts in this decree, they and their successors in interest, respectively, shall be entitled to the use of only one such rights, to wit: either the right named in said decrees, or the right otherwise awarded in this decree'. It is further stipulated that in Book 6 of said record, page 242 in the case of *N. R. Woodworth, et al., versus Frank Anthony, et al.*, in the Findings of Fact appears the following: 'That the following named persons, plaintiffs and defendants herein, appropriated the following number of inches of water, measured under a four inch pressure from said Little Wood River and its tributaries at the following dates respectively for the purpose of irrigating the lands herein described belonging to said respective parties, to wit:' And that on page 252 of said Findings in said record appears the following: 'Mrs. A. B. Hodgeman, 180 inches, from June 4, 1893 for the irrigation of the South East Quarter (SE¼) of Section Thirty (30) Township Two (2) Range Twenty-One (21) East.' "

And also, "Hodgman, Adelaide B., South Half (S½) of the North East Quarter (NE¼) of Section Thirty (30),

Township Two (2) South, Range Twenty-One (21) East, containing 240 acres,'' and ''Hodgman, Adelaide B. 180 inches, June 14, 1883, Silver Creek.'' and ''Hodgman, Adelaide B. 50 inches, May 14, 1885, Silver Creek.'' The above 50 inches of 1885 water being the 50 inches decreed to Shanahan in the Woodworth Decree. Some time prior to March 27th, 1922, Mrs. Hodgman sold the S½NE¼ and the N½ SE¼ together with all appurtenant water rights to H. H. Cook. March 27, 1922, Cook and his wife mortgaged, among other lands, the N½SE¼ of section 30, which did not include the land now owned by respondent, ''together with all other water rights, ditch and canal rights thereunto belonging or in anywise appertaining,'' to the State of Idaho.

This mortgage not being paid, decree of foreclosure was entered November 23, 1926, specifying the water rights as above set forth in the mortgage and so designated in the sheriff's deed, January 28, 1928.

July 3, 1929, Mrs. Hodgman transferred the S½ of the SE¼ of said above section, ''together with 90 inches of water dating from June 14, 1883, as decreed in the case of *S. C. Frost et al. vs. Alturas Water Co. et al.,* in the District Court of the Fourth Judicial District of the State of Idaho'' to Hugh E. Howard, respondent herein.

The State contends respondent is entitled to only one-third of the 180 inches of water originally decreed to the SE¼ of section 30; whereas respondent contends he is entitled to one-half thereof, or 90 inches. Respondent brought this suit against the State and I. C. Cook (son of H. H. Cook), and Ina R. Cook, his wife, tenants of the State in possession of the S½NE¼ and N½SE¼, asking that his title be quieted to the 90 inches claimed by him. Cooks defaulted, the State answered by the attorney general, denying respondent's right to the 90 inches and by cross-complaint asserted the state's right to the ownership of 120 inches of the 180 inches above referred to and asked that its title be quieted against the respondent, and for general relief. On this appeal by the state from a judgment in respondent's favor, while numerous assignments of error are made, but two questions are in effect presented: First, that the suit

cannot be maintained against the state because it has not given its consent to be sued and the court has no jurisdiction over it, and being a claim against the state sole jurisdiction was in the supreme court; and second, that the court erred as a matter of fact and law in finding in favor of respondent.

Although the record of the loan does not disclose, as required by section 55–708, I. C. A., from what fund the money loaned to Cooks was obtained, it is in effect conceded the loan was from the endowment or public school funds of the State, generally under the jurisdiction of the state board of land commissioners and the department of public investments. With regard to court action in connection with such funds and the loaning thereof the statutes specifically provide (secs. 55–714 and 55–715, I. C. A.) that the attorney general is to foreclose any delinquent mortgage when directed by the department of public investments, "and look after and care for the state's interest in every stage of the proceedings until finally determined." Section 56–120, I. C. A., provides as follows:

"The attorney-general shall represent or shall cause to be properly represented in all suits, actions, contests or controversies relating to or involving state lands or timber, before the several land offices in this state, before the general land office at Washington, D. C., and before the courts of this state and of the United States, and may employ a competent attorney or attorneys for that purpose, who shall be paid out of the fund provided for the land department of the state."

Article 9, section 7, of the Constitution of Idaho creates the state board of land commissioners, consisting of the governor, superintendent of public instruction, secretary of state, attorney general and state auditor, "who shall have the direction, control and disposition of the public lands of the state, under such regulations as may be prescribed by law." The last phrase meaning as prescribed by the legislature. Section 56–119, I. C. A., provides, the department of public lands, with such board as its head and the land commissioner as the executive officer thereof, shall have general charge and supervision of public lands except the supervision of public investment; public investments being by section 55–701,

I. C. A., under the department of public investments and in charge of the commissioner of public investments, 65–2901 and 65–2902, I. C. A.

Article 4, section 1, of the Idaho Constitution among others, creates the office of attorney general in the executive department, and provides his duties, are ''as prescribed by this constitution and as may be prescribed by law.'' The only other mention of his power and duties pertinent herein is article 9, section 7, above referred to, as a member of the state land board. Section 65–1301, I. C. A., sets forth the general powers and duties of the attorney general.

There is no provision in the constitution or statutes to the effect that the state may be sued without its consent, and, beginning with *Holister v. State*, 9 Ida. 8, 71 Pac. 541, it has been declared to be the law of this state that such permission to be sued must be expressed in the constitution or statute. (*Thomas & Faris v. State*, 16 Ida. 81, 100 Pac. 761; *State v. State Board of Education*, 33 Ida. 415, 196 Pac. 201; *Davis v. State*, 30 Ida. 137, 163 Pac. 373, Ann. Cas. 1918D, 911.)

On the other hand it is virtually conceded that the attorney general is empowered to institute civil actions for and on behalf of the state for the protection of the state's rights and interests, as was apparently the universal rule at common law; that is, at common law, the attorney general had the right to institute civil suits on his own initiative and at his own discretion for such purpose. (6 C. J. 812, sec. 18; 7 C. J. S. 1226, sec. 8a.)

It is recognized that where the state is the moving party, the other party is entitled to any defense that may be interposed against a private litigant. (*Reilly v. State*, 119 Conn. 217, 175 Atl. 582; *United States v. Moscow Seed Co.*, (D. C. Ida.) 14 Fed. Supp. 135; *State v. Bucholz*, 169 Minn. 226, 210 N. W. 1006; *State v. Columbia Ry. Gas etc. Co.*, 129 S. C. 455, 124 S. E. 758; *People v. Kings County Dev. Co.*, 48 Cal. App. 72, 191 Pac. 1004; *State v. Houston Nat. Bank*, (Tex. Civ. App.) 259 S. W. 175; *Jackson County v. McGlasson*, 167 Tenn. 311, 69 S. W. (2d) 887; *Anderson, Clayton & Co. v. State*, 122 Tex. 530, 62 S. W. (2d) 107; *Martin v. Federal Surety Co.*, 58 Fed. (2d) 79; *Fisk v. Missouri*, 62

Fed. (2d) 150. But this right does not authorize a private litigant to seek affirmative relief by way of complaint, affirmative answer or cross-complaint against the state, where no authority for such purpose has been granted.

Without passing upon the question whether or not any of the statutes with regard to public lands and investments could be construed as giving consent for the state to be sued in connection therewith, the attorney general had the right and authority to file the cross-complaint, and thereafter the court had jurisdiction over the state for the purposes of granting or denying the relief prayed for by the state in its cross-complaint.

It is unnecessary to decide to what ultimate extent the state may be bound as a party litigant by the attorney general[1] because the decree so far as it did not adjudicate anything against the state, and to the extent it refused the state any relief as against respondent's title in the water which he claimed, was, as far as this feature of the action is concerned, valid, and did not adjudicate as such a ''claim'' against the state, required by sec. 10, art. 5, of the constitution to be brought in the supreme court. (59 C. J. 282, sec. 429.)

With regard to the merits of the case the state's contention rests upon the claim that while Mrs. Hodgman and Cook, respectively, owned and operated all three eighties, the 180 inches and the 50 inches of water above referred to were used indiscriminately on all the land, and that H. H. Cook, in an application March 27, 1922, to the state for the loan culminat-

[1] Some of the cases instructive on the point suggested but not decided are: *Clark v. Barnard,* 108 U. S. 436, 2 Sup. Ct. 878, 27 L. ed. 780; *The Sao Vicente,* 281 Fed. 111, 114; *The Sao Vicente,* 295 Fed. 829; *Fisk v. Missouri, supra; Gunter v. Atlantic Coast Line R. R. Co.,* 200 U. S. 273, 26 Sup. Ct. 252, 50 L. ed. 477; *Mehlin v. Ice,* 56 Fed. 19; *Hans v. Louisiana,* 134 U. S. 1, 10 Sup. Ct. 504, 33 L. ed. 842; *O'Connor v. Slaker,* (C. C. A. 8th) 22 Fed. (2d) 147, 152; *Farish v. State Banking Board,* 235 U. S. 498, 35 Sup. Ct. 185, 59 L. ed. 330; *Utah Const. Co. v. State Highway Com.,* 16 Fed. (2d) 322; *Thomas & Faris v. State, supra; Purity Oats Co. v. State,* 125 Kan. 558, 264 Pac. 740; annotation, 42 A. L. R. 1464, at 1483; *McNeel v. State,* 120 Neb. 674, 234 N. W. 786; *United States Casualty Co. v. State Highway Department,* 155 S. C. 77, 151 S. E. 887.

ing in the mortgage foreclosure, made this statement as to his water right: ''Water for irrigation is obtained from Silver Creek.'' and that ''the kind and nature of my water right is decreed water from the court, evidence of title, (a) court decree, *Frost v. Alturas*, 180 inches, June 14, 1883, 50 inches 5/15/1885.'' It will be noticed however that while the statement of the appraiser was, ''Describe water right in full': He has an early decreed water right for the 160 in the east, but no water right for the 120 acres in the SW¼'' (SW¼ is not involved herein), the 80 acres in the east being the N½ NE¼ to which had been decreed 50 inches of 1885 water, the application does not specify how much water was claimed by Cook to be appurtenant to the land he mortgaged, which did not involve the land owned by respondent. The nature and kind of water was decreed water, and the evidence of title was the decree awarding the 180 inches to the SE¼ and 50 inches to the S½ NE¼, but that did not necessarily state or indicate that all of the water in said decree was considered by him to be appurtenant to the land he was mortgaging. The full face value of this statement in the application would tend to take all water from the S½ of the SE¼, yet such construction has never been asserted or put into effect by anyone.

This court held in *Federal Land Bank v. Union Central L. Ins. Co.*, 51 Ida. 490, 6 Pac. (2d) 486, and *Federal Land Bank v. Union Central L. Ins. Co.*, 54 Ida. 161, 29 Pac. (2d) 1009, that general use by the owner of adjoining ranches of the water appurtenant to each does not show abandonment of the water appurtenant to one parcel of land and permanent transfer to the other, and also that the recitation in an application for a state loan, unknown to the subsequent purchaser of that specific water, is insufficient to sustain a decree quieting title as against the subsequent purchaser and that the purchaser has a right to rely upon the public record, which in this instance showed a mortgage to the state of only the water appurtenant to the land now owned by it. Respondent testified positively he knew nothing of the above application until it was introduced in evidence in this case, and there is no evidence contradicting him. Respondent's deed showed

a specific amount of water decreed (never modified by court action) to the party upon whose indiscriminate use of both rights the state now in part must rely.

The mortgage was foreclosed in 1927 and respondent acquired title in 1929 and there has been no subsequent use sufficient in time by either party to ripen into a prescriptive title. In 1929, '30, '31 and '32, respondent received 90 inches of water. In '33, 60 inches, '34, 60 inches and in '35, 90 inches. In 1936 he received 60 inches part of the year and 90 inches part of the year, the changes in '33, '34 and '36 being because of different opinions of an assistant attorney general and different demands on the water master, these opinions and orders not being in the record.

Neither Mrs. Hodgman nor H. H. Cook or wife testified in the case and there is no showing as to any intention on their part to transfer the water right in whole or in part from one eighty to the other. The analysis in *Federal Land Bank v. Union Central L. Ins. Co.*, *supra*, of facts necessary to sustain such a contention as made by the state herein and the declarations therein of the applicable law clearly demonstrates that the showing herein was not sufficient to sustain the state's claim to the water in dispute and to that extent the judgment is affirmed, but no costs, of course, allowed.

Holden, C. J., and Morgan and Ailshie, JJ., concur.

Budge, J., deeming himself disqualified did not sit at the hearing nor participate in the decision of the case.