430 P.2d 399

STATE of New Mexico ex rel. ATTORNEY GENERAL of New Mexico, Petitioner,

v.

George L. REESE, Jr., District Judge, Respondent.

No. 8432.

Supreme Court of New Mexico.

July 24, 1967.

242

Boston E. Witt, Atty. Gen., Joel M. Carson, Edward R. Pearson, Asst. Attys. Gen., Santa Fe, for petitioner.

Alfonso G. Sanchez, Dist. Atty., Patricio S. Sanchez, Asst. Dist. Atty., Santa Fe, for respondent.

OPINION

MOISE, Justice.

The Attorney General has brought this action seeking to prohibit the respondent, district judge, from proceeding further without allowing petitioner to intervene in an action brought in the name of the State of New Mexico by the district attorney of the First Judicial District in and for Santa Fe County, wherein recovery is sought of certain amounts claimed to have been illegally paid as salary and per diem by the State to John F. Sudderth, Chairman of the State Highway Commission.

Although petitioner sought to intervene by petition in the district court and the court denied permission, it does not appear to us that intervention as a party is in fact sought. As we understand intervention, it is an act or proceeding whereby a person is permitted to become a party in an action between other persons, after which the litigation proceeds with the original and intervening parties. 67 C.J.S. Parties § 53, p. 974; § 21–1–1(24), N.M.S.A. 1953. See State ex rel. Lebeck v. Chavez, 45 N.M. 161, 113 P.2d 179 (1941). The district court action was brought in the name of the State, and the attorney general, by his motion to intervene, sought to speak for the State in the action in lieu of the district attorney who it is asserted acted without authority. The true question before the district court was: Who is entitled to represent the State and control the litigation—the district attorney or the attorney general? The trial judge having decided that the district attorney should continue in the case as counsel for the State, the attorney general here seeks our intervention to prevent the court from proceeding.

We recognize some question to be present concerning the use of the writ of

prohibition to require a court to accept one attorney as counsel in a case, rather than another. See State ex rel. Thrash v. Lamb, 237 Mo. 437, 141 S.W. 665 (1911); State ex rel. Missouri Pac. R. Co. v. Williams, 221 Mo. 227, 120 S.W. 740 (1909). However, because of the analogy that might be drawn between a case wherein a party may be represented by an attorney not of his choice and a case where indispensable parties are absent, in which event prohibition may be proper to stop proceedings, State Game Commission v. Tackett, 71 N.M. 400, 379 P.2d 54 (1963), we conclude that prohibition is a proper means for determining the issue here.

■■ That a court obtains no jurisdiction to proceed and render judgment in an action brought without authority has been held under a number of circumstances. See Pueblo of Santa Rosa v. Fall, 273 U.S. 315, 47 S.Ct. 361, 71 L.Ed. 658 (1927); Meredith v. The Ionian Trader, 279 F.2d 471 (2d Cir. 1960); Sutherland v. International Ins. Co. of New York, 43 F.2d 969 (2d Cir. 1930); Courtney v. Campbell, 143 Okl. 5, 286 P. 872 (1930); Howard v. Boyce, 254 N.C. 255, 118 S.E.2d 897 (1961); Kennington-Saenger Theatres v. State, 196 Miss. 841, 18 So.2d 483, 153 A.L.R. 883 (1948). Prohibition is properly utilized to prevent a court from proceeding without jurisdiction. State ex rel. Townsend v. Court of Appeals, 78 N.M. 71, 428 P.2d 473 (1967); State ex rel. Board of County Com'rs of Grant County v. Burks, 75 N.M. 19, 399 P.2d 920 (1965); State ex rel. Prince v. Coors, 52 N.M. 189, 194 P.2d 678 (1948).

An additional consideration of which we take notice is the importance of the issue of relative powers and duties of the attorney general and the district attorney. It is of utmost importance that the conflict be settled, and promptly. State ex rel. Townsend v. Court of Appeals, supra. Accordingly, while recognizing that prohibition should issue only in particular cases and where circumstances are such as to make it imperative, we find in the instant situation good and substantial reasons for passing on the issues. Compare Montoya v. McManus, 68 N.M. 381, 362 P.2d 771 (1961).

We are thus brought to the question of whether the district attorney had authority to file the action on behalf of the State. This requires examination of our constitution and statutes.

Both the attorney general and district attorney offices are provided for in our constitution. In Art. V, § 1, one of the officers of the executive department is stated to be the attorney general. No grant of powers to the office is set forth here or anywhere else in the constitution. On the other hand, district attorneys are provided for in Art. VI, being the article on the judicial department. Art. VI, § 24, contains the following language:

"There shall be a district attorney for each judicial district, who * * * shall be the law officer of the state and of the counties within his district * * * and shall perform such duties and receive such salary as may be prescribed by law."

We next note the pertinent statutes. Section 4–3–2, N.M.S.A.1953, sets forth the duties of the attorney general. It reads:

"It shall be the duty of the attorney general, except as otherwise provided by law:

(a) To prosecute and defend all causes in the Supreme Court in which the state is a party or interested.

(b) To prosecute and defend in any other court or tribunal, all actions and proceedings, civil or criminal, in which the state may be a party or interested, when, in his judgment, the interest of the state requires such action, or when requested to do so by the governor.

(c) To prosecute and defend all actions and proceedings brought by or against any state officer or head of state department, state board or commission or any employee of the state in his official capacity.

(d) To give his opinion in writing upon any question of law submitted to him

by the legislature, or each branch thereof, the governor, secretary of state, treasurer, auditor or any other state official, elective or appointive, and the several district attorneys in the state on any subject pending before them or under their control with which they have to deal officially or with reference to their duty in office.

(e) To prepare drafts for contracts, bonds, and other instruments of writing which may be required for the use of the state, whenever requested to do so by any state officer.

(f) To promptly account to the treasurer of the state for all state funds received by him.

(g) To report to the governor and legislature the condition of his office, opinions rendered and business transacted of public interest, which report shall be submitted each two [2] years upon the date the regular session of the legislature begins.

(h) To keep a register of all opinions rendered by him and of all actions prosecuted and defended by him, and of all proceedings had in relation thereto.

(i) To attend and assist in the trial of any indictment in any county, on direction of the governor.

(j) To perform all other duties required by law."

It is apparent that only subsections (b) and (c) have any direct application in the present situation. However, in addition to the specified powers, the attorney general asserts that he also has the powers inhering in the office at common law.

Since, in our view, the problem can only be resolved if the powers of the district attorney are considered together with those of the attorney general, we set forth parallel provisions of our statutes dealing with powers of district attorneys. These are in addition to the statement in Art. VI, § 24, that the district attorney is the "law officer of the state," and that he "shall perform such duties and receive such salary as may be prescribed by law."

We quote § 17–1–11(1), N.M.S.A.1953:

"It shall be the duty of the district attorney:

"1. To prosecute and defend for the state in all courts of record of the counties of his district, all cases, criminal and civil, in which the state or any county in his district may be a party, or may be interested or concerned;

"2. To represent the county before the board of county commissioners of any county in his district in all matters coming before such board, whenever he is requested to do so by the board of county commissioners, and he may appear before such board when sitting as a board of equalization without such request;

"3. To advise all county and state officers whenever such advice is requested;

"4. To represent any county in his district in all civil cases in which such county may be concerned in the Supreme Court, this provision, however, not to apply to suits brought in the name of the state."

In addition to the two sections quoted, consideration must necessarily be given to § 4–3–3, N.M.S.A.1953, reading:

"Upon the failure or refusal of any district attorney to act in any criminal or civil case or matter in which the county, state or any department thereof is a party or has an interest, the attorney general be, and he is hereby authorized to act on behalf of said county, state or any department thereof, if after a thorough investigation, such action is ascertained to be advisable by the attorney general. Provided, that the attorney general shall, upon direction of the governor, investigate any matter or matters in any county of the state in which the county, state or any department may be interested. After such investigation, the attorney general be, and he is hereby authorized to take such action as, in his opinion, conditions warrant. The cost

of such investigation shall be paid out of the general fund of the county wherein such investigation shall have been made, and the costs of any prosecution arising out of such investigation shall be paid as are the costs in cases prosecuted by district attorneys."

Section 4–3–16, N.M.S.A.1953, is also pertinent. It reads:

"The attorney general of New Mexico is directed to act, if requested, as attorney for any officer, deputy, assistant, agent or employee of the state or of a state institution in the event such person is named as a party in any civil action in connection with an act growing out of the performance of his duty; Provided, however, this section shall not apply to any suits or proceedings on behalf of the state against such person."

With the foregoing constitutional and statutory provisions in mind, what is disclosed as to the powers and duties of the two offices? To our minds the pattern is clear. The constitution makes the attorney general an executive officer, and the legislature has invested him with power to prosecute and defend, in any court, civil actions in which the state is a party, when, in the attorney general's judgment, the interest of the state requires such action. The language, in our view, permits the attorney general to bring an action on behalf of the state if no other provision has been made for it to be brought, or to step into litigation brought by another where the interests of the state are not being adequately represented or protected. That this is the intent and meaning is made doubly clear when § 4–3–3, supra, is considered. It is there stated that the attorney general may act on behalf of the state in any case where the state is a party or has an interest if the district attorney has failed or refused to do so.

If we would concede for the sake of argument that the action which the attorney general here seeks to enter and control could have been brought by him, by what authority does he here seek to oust the district attorney who has brought the action as "law officer of the state," as stated in Art. VI, § 24, supra, and under § 17–1–11(1), supra? The right asserted by the attorney general is based on (1) the quoted language of § 4–3–2(b), supra; (2) § 4–3–2(c), supra; (3) his claimed common-law powers; (4) his duty in cases of state-wide interest; and (5) to avoid conflict between the offices.

We see nothing in § 4–3–2(b), supra, suggesting a right in the attorney general to displace the district attorney in a case where the rights of the state are being actively advocated. If the powers of the attorney general are generally superior to the district attorney in any case, and we see nothing in the statute making them so, § 4–3–3, supra, granting such powers only "upon the failure or refusal of any district attorney to act" would be clearly surplusage and unnecessary. There is nothing in our laws making the attorney general the superior of the district attorneys.[1] To the contrary, the two officers are separate and, except as the legislature has directed joint authority as it has done in a limited number of situations,[2] there is no duplication of duties. As we see the situation, the most that can be said concerning the powers of the attorney general in § 4–3–2(b), supra, is that it gives concurrent right with the district attorney to bring an ac-

---

1. Three possible exceptions are noted. § 3–8–32, N.M.S.A.1953, dealing with prosecutions for violation of the penal provisions of the Election Code; § 49–12–4, N.M.S.A.1953, dealing with collection of a civil penalty for false advertising; § 67–4–11, N.M.S.A.1953, dealing with duties to represent the board of dental examiners.

2. See §§ 3–2–46; 3–10–24; 4–9–20; 22–2–7; 22–4–8; 22–15–4; 46–2–2; 54–1–7; 54–6–7; 55–7–15; 59–9–20; 64–27–63; 64–31–7; 72–15–44; 72–17–17; 75–2–10, N.M.S.A.1953. There possibly may be others.

tion. We see nothing therein which remotely suggests a right to supplant or take over from a district attorney who is performing his legal duties.

We next note the attorney general's argument that under § 4–3–2(c), supra, he is given the duty of defending state officers and heads of commissions in actions brought against them and where this fact is present he alone has the right to act. Here, again, it would appear to us, the attorney general misconceives the proper duties of his office. If we assume, as would seem to be indicated here, that the attorney general feels this action should not have been brought, all the more reason is present for him to stand by and let the district attorney proceed. We say it appears that the attorney general feels the action should not have been brought because of the issues raised in his petition in intervention attached to his motion to intervene in the court below, and because of his prayer that the complaint be dismissed.

He admits certain allegations stated in the complaint and denies others, and then asserts what he has denominated affirmative defenses, as follows: (1) that the court has no jurisdiction over the subject matter; (2) that the complaint fails to state a claim for which relief can be given; (3) that the district attorney has no standing or authority to bring the action; (4) that there is an absence of indispensable parties; (5) that the suit is barred because it is an action against the sovereign; and (6) that the State has a plain, speedy and adequate remedy at law. The pleading closely parallels the answer filed earlier by the defendant, and would leave the case uncontested on the side of the State. Section 4–3–16, quoted supra, applies in just such a situation.

Clearly, under the circumstances here present, the attorney general is relieved of any duties under § 4–3–2(c), supra, and no superior rights to appear on behalf of the state are present.

The attorney general argues with great conviction and cites considerable authority in support of the proposition that he is vested with common-law powers and, accordingly, the powers and duties in connection with instituting the case below were inherent in him. In order to establish these powers in himself he recognizes that he must overcome the holding of this court in State v. Davidson, 33 N.M. 664, 275 P. 373 (1929), where it was unequivocally stated that "no common-law powers were confirmed in the office of Attorney General by our Constitution." He advances two reasons for us to reconsider and retreat from that holding. First, he asserts that the case stands alone in this country in its conclusion that common-law powers and duties are not vested in the office under constitutional provisions such as ours where the attorney general's office is created without any provision being made for any powers or duties for the office. Our attention has been directed to the constitutions of at least fifteen states which provide in a similar manner for an attorney general,[3] and numerous cases are cited from these jurisdictions holding that the attorney general thus provided for had all powers pertaining to that office at common law.[4] It is asserted

3. Delaware Const., Art. III, Sec. 21; Art. XV, Sec. 1, Del.C.Ann.
Idaho Const., Art. IV, Sec. 1.
Kansas Const., Art. I, Sec. 1.
Maine Const., Art. IX, Secs. 2 and 11.
Massachusetts Const., Art. XVIII, Sec. 119.
Minnesota Const., Art. V, Sec. 1.
Mississippi Const., Art. VI, Sec. 173.
Missouri Const., Art. IV, Sec. 12, V.A.M.S.
Nebraska Const., Art. IV, Sec. 1.
New Jersey Const., Art. V, Sec. 4.
New York Const., Art. V, Sec. 4.
Ohio Const., Art. III, Sec. 1.
Pennsylvania Const., Art. IV, Sec. 1, P.S.
Tennessee Const., Art. VI, Sec. 5.
West Virginia Const., Art. IV, Sec. 4; Art. VII, Sec. 2.

4. Darling Apartment Co. v. Springer, 25 Del.Ch. 420, 22 A.2d 397, 137 A.L.R. 803 (1941).

that none of these states hold otherwise, and that New Mexico is thus left in the unenviable position of being a minority of one.[5] An examination of each of these constitutions discloses that in only five[6] are the district attorney and the attorney general both established as constitutional officers, and none contains the language quoted from Art. VI, § 24, that the district attorney "shall be the law officer of the state." These and other differences disclosed by careful comparison detract from any of these decisions as compelling authority.

This court, in disposing of State v. Davidson, supra, was fully aware of the rule being advocated by the attorney general, but determined that it had no application because of the history of the office of attorney general in New Mexico which is there carefully analyzed. The attorney general now asserts that the court did not correctly trace the progressive changes made in the office, and accordingly fell into error. We have studied the history as outlined by the attorney general in his brief, and have compared it with the review made by the court in State v. Davidson, supra. We find no material departures. The keystone of the attorney general's argument is that, before 1876 when the common law was made the rule of practice and decision[7] we had an attorney general created by statute[8] and given certain powers and, thereafter, in 1889, the office was abolished and a solicitor general provided as a replacement with certain powers.[9] Further, when, in 1905, the office of solicitor general was in turn abolished and the attorney general's office substituted,[10] the attorney general had the common-law powers residing in the solicitor general, and our constitution recognized the office with the powers it then had.

We perceive the argument has at least two weaknesses. First, no authority is cited to support the statement that the

Howard v. Cook, 59 Idaho 391, 83 P.2d 208 (1938).

Padgett v. Williams, 82 Idaho 28, 348 P. 2d 944 (1960).

State v. Finch, 128 Kan. 665, 280 P. 910, 66 A.L.R. 1369 (1929).

Withee v. Lane and Libby Fisheries Co., 120 Me. 121, 113 A. 22 (1921).

Commonwealth v. Kozlowsky, 238 Mass. 379, 131 N.E. 207 (1921).

State ex rel. Young v. Robinson, 101 Minn. 277, 112 N.W. 269, 20 L.R.A., N.S., 1127 (1907).

Capitol Stages v. State, 157 Miss. 576, 128 So. 759 (1930).

State ex rel. Glenn v. Stein, 13 Neb. 529, 14 N.W. 481 (1882);

In re Equalization of Assessment of Nat. Gas Pipe Lines, 123 Neb. 259, 242 N.W. 609, 243 N.W. 264 (1932);

Van Riper v. Jenkins, 140 N.J.Eq. 99, 45 A.2d 844, 163 A.L.R. 1343 (1946);

Board of Public Util. Com'rs of New Jersey v. Lehigh Valley R. Co., 106 N.J.L. 411, 149 A. 263 (1930);

Commonwealth ex rel. Minerd v. Margiotti, 325 Pa. 17, 188 A. 524 (1936);

Appeal of Margiotti, 365 Pa. 330, 75 A. 2d 465 (1950);

Commonwealth ex rel. Shumaker v. New York and Pennsylvania Co., 378 Pa. 359, 106 A.2d 239 (1954);

In re Shelley, 332 Pa. 358, 2 A.2d 809 (1938).

See, also:

People v. Santa Clara Lumber Co., 55 Misc. 507, 106 N.Y.S. 624 (1907);

People v. Tru-Sport Pub. Co., 160 Misc. 628, 291 N.Y.S. 449 (1936);

People v. Dorsey, 176 Misc. 932, 29 N.Y.S.2d 637 (1941);

State ex rel. Schneider's Credit Jewelers v. Brackman, 272 S.W.2d 289 (Mo. App.1954);

State ex rel. Downs v. Kimberlin, 364 Mo. 215, 260 S.W.2d 552 (1953);

State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S.W. 327 (1920);

State ex rel. Thrash v. Lamb, 237 Mo. 437, 141 S.W. 665 (1911).

5. However, see State v. Spurgeon, 99 Tenn. 659, 47 S.W. 235 (1897).

6. Idaho, Massachusetts, Mississippi, New York, Tennessee.

7. § 21-3-3, N.M.S.A.1953.

8. Kearney Code, 1 N.M.S.A.1953, p. 307.

9. Ch. 56, N.M.S.L.1889.

10. Ch. 118, N.M.S.L.1905.

248

solicitor general must have had common-law powers of an attorney general. As a matter of fact, we note State ex rel. v. Home Brewing Co., 182 Ind. 75, 105 N.E. 909 (1914), where it is held that when the attorney general's office is created by the legislature no common-law powers attach to the office. Next, an examination of the 1905 statute discloses that the solicitor general's office was not abolished—all that was done was to change the title of the office from solicitor general to attorney general, with provision that the office continue the same except for the change of name, and with all powers and duties remaining unaltered. Accordingly, absent common-law powers of an attorney general in the solicitor general, they would not have resided in the attorney general in 1912 when our Constitution was adopted.

Be this as it may, we are not disposed to rest our conclusion on the name of the office, nor on any technical arguments concerning powers of the two offices. It is sufficient to say that we are not convinced that the court in State v. Davidson, supra, in any sense mistook the facts concerning the origin and history of the attorney general's office. Even if it appeared to us that they were mistaken or misled, we would hesitate to overturn a decision so far-reaching in its implications which has gone unchallenged for almost forty years. Neither are we impressed with the argument that the holding in this regard was unnecessary to the decision, as stated in an article appearing in 7 Baylor L.Rev. 1 (1955). The rule has withstood the test of time and, so far as we are aware, no serious problems have arisen in the intervening years because of conflicts between the powers of the attorney general and those pertaining to district attorneys.

The attorney general next argues that our whole scheme of government would seem to require that any questions having statewide impact should be handled by him as an officer for the entire state, and that the district attorneys be limited to matters arising in their respective districts. He

further states that any other rule would necessarily result in a possibility of actions such as the one here involved being filed in as many places as we have judicial districts, and that conflict between his office and that of district attorney would be unavoidable.

Principal reliance for his position concerning statewide matters as distinguished from district or local matters is placed on the Mississippi case of Kennington-Saenger Theatres v. State, supra. That case held a quo warranto proceeding to cancel a corporate charter had statewide effects and could not be instituted by a district attorney. However, as was true of two dissenting judges in that case in interpreting the laws of Mississippi, we see no basis in our statutes for a distinction such as was there made. Neither do we understand which cases would be considered local, and which would have statewide importance. Clearly, in New Mexico, the district attorney would have authority to bring a quo warranto action to test statewide authority of a corporation. § 22-15-4, N.M.S.A.1953. Accordingly, the conflict foreseen by the Mississippi Supreme Court cannot be avoided in New Mexico. We might add that we are not impressed that any real problem exists, or is to be anticipated. At least, in almost forty years it has not become evident.

By nothing which we have said do we suggest that the district attorney has any powers outside his district. Neither do we hold that he has any common-law powers. The constitution and statutes clearly prescribe and delimit his authority. We do not consider that either State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S.W. 327 (1920) or State ex rel. Finley v. Lodwich, 137 Ohio St. 329, 29 N.E.2d 959, 131 A.L.R. 1205 (1940) are of any aid to the attorney general's position.

■ One further word concerning possible harassment through a multiplicity of suits such as the one in which the attorney general seeks to intervene. We are not called upon to determine if such an action

could be brought in all eleven of our judicial districts, as feared by the attorney general. It is sufficient to point out that by virtue of § 21–5–1, N.M.S.A.1953, venue of actions against state officers is laid "in the court of the county wherein their offices are located, at the capital and not elsewhere." See Pollack v. Montoya, 55 N.M. 390, 234 P.2d 336 (1951). Accordingly, it would appear certain that aside from other possible locations in the state where suit might be instituted, Santa Fe County, the capital, is a proper place, and the district attorney of the first judicial district, wherein the capital is situate, as the law officer of the state and, pursuant to the statutory authority vested in him, was a proper party to sue in the name of the State.

We would add to what has been said only the thought that by earlier decisions of this court we have severely restricted the character and number of persons who may bring suit to test actions of public officials. See Asplund v. Hannett, 31 N.M. 641, 249 P. 1074, 58 A.L.R. 573 (1926); Kuhn v. Burroughs, 66 N.M. 61, 342 P.2d 1086 (1959); Padilla v. Franklin, 70 N.M. 243, 372 P.2d 820 (1962); State ex rel. Gomez v. Campbell, 75 N.M. 86, 400 P.2d 956 (1965). To adopt the position of the attorney general would have the effect of limiting those who could bring suit to test the propriety of public action in matters having statewide impact to the single individual occupying the office of attorney general. If for any reason he failed or refused to act, there is no provision whereby anyone else can act in his stead. When the power to act resides in a district attorney who may be supplanted by the attorney general in the event he fails to act in a given situation, we have at least one additional individual authorized to challenge public conduct.

When it is recognized that in addition to the duties to appear on behalf of the State in courts other than the Supreme Court, as provided in § 4–3–2(b), supra, the attorney general by § 4–3–2(d), supra, is made legal adviser to the legislature and executive officers, the denial of power to act in the district attorney would effectively leave no official authorized to question any conduct taken pursuant to advice of the attorney general. The matter now pending before the district court raises certain questions concerning the validity of actions of the legislature which the attorney general contends should not be disturbed because of the far-reaching effects of doing so. With this line of reasoning we cannot agree.

If the legislature's acts have departed from the provisions and restraints of the constitution they are subject to question in a proper court. Neither pride of authorship nor concern for the consequences of violation should be permitted to interfere with judicial review.

It follows that the alternative writ issued in this cause should be quashed.

It is so ordered.

CHAVEZ, C. J., and NOBLE, COMPTON and CARMODY, JJ., concur.